# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALI RIAD SHOUMAN,

        Defendant-Appellant.

UNPUBLISHED
October 4, 2016

No. 330383
Wayne Circuit Court
LC No. 15-005989-FH

Before: BORRELLO, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by interlocutory leave granted[1] an order adopting the prosecutor's proposed jury instruction regarding the elements of the felony offense of possessing, acquiring, transporting, or offering for sale tobacco products other than cigarettes with an aggregate wholesale price of $250 or more without having a license, MCL 205.428(3). We affirm.

MCL 205.423(1), which is a provision of the Tobacco Products Tax Act (TPTA), MCL 205.421 *et seq.*, provides:

> Beginning May 1, 1994, a person shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer, wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transportation company, or transporter in this state unless licensed to do so. A license granted under this act is not assignable.

Defendant is charged with violating MCL 205.428(3), which states:

> A person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes, tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more, 3,000 or more counterfeit cigarettes, 3,000 or more counterfeit cigarette papers, 3,000 or more gray market

---

[1] See *People v Shouman*, unpublished order of the Court of Appeals entered April 7, 2016 (Docket No. 330383).

cigarettes, or 3,000 or more gray market cigarette papers is guilty of a felony, punishable by a fine of not more than $50,000.00 or imprisonment for not more than 5 years, or both.

It is alleged that defendant possessed, acquired, offered for sale, or transported tobacco products other than cigarettes with an aggregate wholesale price of $250 or more without a license.

Defendant argues that the trial court erred in concluding that MCL 205.428(3) is a strict liability offense without a *mens rea* or fault requirement that must be included in the jury instruction. The premise of defendant's argument is faulty because the trial court's instruction *does* require proof of some knowledge on the part of defendant. In particular, the instruction requires proof that defendant *knowingly* possessed, acquired, offered for sale, or transported tobacco products other than cigarettes. As explained below, we conclude that proof of any additional knowledge or intent is not required.

Questions of law pertaining to jury instructions are reviewed de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A trial court's determination whether a jury instruction applies to the facts of a case is reviewed for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). "Determining the elements of a crime is also a question of law that we review de novo." *People v Pace*, 311 Mich App 1, 4; 874 NW2d 164 (2015). In *People v Phillips*, 469 Mich 390, 395; 666 NW2d 657 (2003), our Supreme Court set forth the following principles of statutory interpretation:

> When construing a statute, our primary goal is to ascertain and give effect to the intent of the Legislature. To do so, we begin by examining the language of the statute. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and the statute is enforced as written. Stated differently, a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent. [Quotation marks and citations omitted.]

There is no case law stating the elements of the offense specified in MCL 205.428(3). The parties discuss at length this Court's opinion in *People v Nasir*, 255 Mich App 38; 662 NW2d 29 (2003). In *Nasir*, this Court addressed the elements of MCL 205.428(6), another criminal offense contained in the TPTA, which provides:

> A person who manufactures, possesses, or uses a stamp or manufactures, possesses, or uses a counterfeit stamp or writing or device intended to replicate a stamp without authorization of the department, a licensee who purchases or obtains a stamp from any person other than the department, or who falsifies a manufacturer's label on cigarettes, counterfeit cigarettes, gray market cigarette papers, or counterfeit cigarette papers is guilty of a felony and shall be punished by imprisonment for not less than 1 year or more than 10 years and may be punished by a fine of not more than $50,000.00.

The defendant in *Nasir* was convicted of possessing or using counterfeit tax stamps in violation of MCL 205.428(6). *Nasir*, 255 Mich App at 39. The trial court concluded that the statute created a strict liability offense and instructed the jury that the prosecutor had to prove that the defendant possessed or used a counterfeit stamp without the Department of Treasury's authorization. *Id*. at 40. On appeal, this Court noted that MCL 205.428(6) does not contain a fault element. *Id*. at 41. This Court considered several factors in ascertaining whether the Legislature nonetheless intended to require some fault as a predicate to finding guilt. *Id*. at 41-45. MCL 205.428(6) did not codify a common-law crime but was "at its heart a revenue statute, designed to assure that tobacco taxes levied in support of Michigan schools are not evaded." *Id*. at 42. Nor did the statute create a public welfare offense which may impose criminal penalties irrespective of intent; instead, MCL 205.428(6) is a revenue provision that was "not designed to place the burden of protecting the public welfare on an 'otherwise innocent' person who is in a position to prevent an injury to the public welfare with no more care than society might reasonably expect." *Id*. at 42-43 (quotation marks, ellipsis, and citations omitted). Further, the punishment provided was severe given that the violation of MCL 205.428(6) is a felony punishable by imprisonment for up to 10 years, with a mandatory prison term of at least one year, and a fine of up to $50,000; such punishment is not typical of public welfare offenses. *Id*. at 43-44. The damage to one's reputation arising from such punishment suggested that some level of fault is required. *Id*. at 44. Failure to include a *mens rea* element could criminalize a broad range of apparently innocent conduct, such as by rendering criminal a retail consumer's possession of a pack of cigarettes bearing a counterfeit tax stamp. *Id*. The possible loss of potential tax revenue was not the type of immediate harm to the public welfare that is common to strict liability offenses. *Id*. at 45. Prosecutors would not face an oppressive burden from the inclusion of a fault element because the difficulty in proving an actor's state of mind is addressed by the rule that minimal circumstantial evidence will suffice to prove state of mind. *Id*.

> Accordingly, we hold that knowledge is an element of the offense of which defendant stands convicted. Therefore, in order to establish that a defendant is guilty of possessing or using counterfeit tax stamps, the prosecution must prove that (1) the defendant possessed or used (2) a counterfeit stamp, or a writing or device intended to replicate a stamp, (3) that the defendant possessed or used the counterfeit tax stamp, or a writing or device intended to replicate a stamp, with knowledge that the stamp, writing, or device was not an authentic tax stamp, and (4) that the defendant acted without authorization of the Michigan Department of Treasury. We do not believe that the Legislature intended that the offense contain a specific intent element, nor do we believe that a defendant need act with knowledge that the defendant does so without the authorization of the Michigan Department of Treasury. We also conclude that any potential due process problem is remedied by the inclusion of the above fault element in the prima facie case. [*Id*. at 45-46.]

The *Nasir* Court therefore reversed the defendant's conviction because the jury was not instructed on the element of *mens rea* required for the offense. *Id*. at 46-47.

It is unnecessary in this case to determine whether the offense set forth in MCL 205.428(3) constitutes a true strict liability crime, i.e., a crime that requires no mental element but only the prohibited act. See *People v Quinn*, 440 Mich 178, 188; 487 NW2d 194 (1992).

The prosecutor has agreed to require proof of knowledge concerning defendant's possession of the tobacco products, and the trial court has adopted that knowledge requirement in its instructions. "[W]here a statute requires a criminal mind for some but not all of its elements, it is not one of strict liability." *Id*. at 187. In *Quinn*, our Supreme Court considered whether transportation or possession of a loaded firearm other than a pistol in or upon a vehicle, MCL 750.227c, required proof of the defendant's knowledge that the firearm was loaded. *Quinn*, 440 Mich at 180. The Supreme Court noted:

> The prosecutor does not contest that the statute requires proof of knowledge of the presence of the firearm in the vehicle. We assume arguendo that proof of knowledge of the presence of the firearm is an element of the offense in question, recognizing that the question has not been decided by this Court or the Court of Appeals. [*Id*. at 180 n 1.]

Our Supreme Court further explained that "[i]n light of the prosecutor's concession, we do not deal with the more controversial issues involved in true strict liability crimes, i.e., statutes requiring no mens rea at all." *Id*. at 184 n 8. Likewise, here, because the prosecutor has agreed to an instruction requiring the jury to find that defendant *knowingly* possessed the tobacco products in order to convict him, this Court need not address whether the offense in MCL 205.428(3) constitutes a true strict liability crime for which no proof of *mens rea* is required.[2]

---

[2] We note, however, that applying the factors discussed in *Nasir* might be more likely to lead to the conclusion that MCL 205.428(3) is a true strict liability crime than in the case of MCL 205.428(6). In particular, the punishment provided for by MCL 205.428(3) is less severe than for MCL 205.428(6). Although MCL 205.428(3) authorizes imprisonment for up to five years, it does not, unlike MCL 205.428(6), *mandate* imprisonment for at least one year or authorize imprisonment for up to 10 years. Moreover, whereas *Nasir* concluded that the failure to include a *mens rea* requirement in MCL 205.428(6) could criminalize a broad range of apparently innocent conduct such as by rendering criminal a retail consumer's possession of a pack of cigarettes bearing a counterfeit tax stamp, *Nasir*, 255 Mich App at 44, it is more difficult to envision a likely scenario in which a person would innocently transport tobacco products with a wholesale aggregate price of $250 or more without the required license or permit, particularly in light of the transporter's statutory responsibility to have the requisite license and permit in his or her possession while transporting the tobacco products. See MCL 205.426(7) and (8). In any event, because the prosecutor in this case has agreed to instruct the jury that defendant must have *knowingly* possessed or transported the tobacco products, this Court need not address whether MCL 205.428(3) is a true strict liability crime. See *Quinn*, 440 Mich at 180 n 1, 184 n 8. Also, we note that the recently enacted default *mens rea* statute, MCL 8.9, does not apply here because the offense was committed before January 1, 2016. See MCL 8.9(1) ("Except as otherwise provided in this section, a person is not guilty of a criminal offense committed *on or after January 1, 2016* unless both of the following apply . . . .") (emphasis added); 2015 PA 250. In sum, it does not appear that the application of MCL 8.9(1) would require a different outcome.

There is, nonetheless, useful analysis in *Quinn* and other cases concerning both strict liability crimes and the requirement of proving a defendant's intent or knowledge. The Court noted in *Quinn* that true strict liability crimes are proper under some circumstances and that "[t]he Legislature may impose certain penalties regardless of the actor's criminal intent and regardless of what the actor actually knew or did not know." *Id*. at 188. The *Quinn* Court noted that "the prosecution need not prove as an element of the offense of carrying a concealed weapon, MCL 750.227, that the defendant knew his permit was expired[.]" *Id*. at 189, citing *People v Combs*, 160 Mich App 666, 673; 408 NW2d 420 (1987). In some situations, requiring proof of knowledge would frustrate a statute's regulatory purpose. *Quinn*, 440 Mich at 189. "[I]t is clear under both federal and state authority that the Legislature, as part of its police powers, may define an act to make it criminal without defining the actor's knowledge as an element of the offense." *Id*. at 189-190. In *Quinn*, the Supreme Court concluded that knowledge of the firearm being loaded is not an element of MCL 750.227c. *Id*. at 197.

> Section 227c promotes justice and effects the objects of the law by imposing on those who transport firearms in their vehicles the duty to ensure that those firearms are unloaded. . . . The person who transports a firearm must inspect it before transporting it. [*Id*. at 197-198 (quotation marks, ellipsis, and citation omitted).]

In *People v Motor City Hosp & Surgical Supply, Inc*, 227 Mich App 209, 210; 575 NW2d 95 (1997), this Court held that MCL 400.604, a provision of the Medicaid False Claims Act (MFCA), and MCL 752.1004, a provision of the Health Care False Claims Act (HCFCA), both of which criminalize the receipt of a referral fee, did not include a "knowledge or corrupt intent" element. The plain language of the statutory offenses did not include such an element. *Id*. at 212. Because the offenses did not codify a common law crime, this Court evaluated whether the Legislature intended scienter as an element of the offense and concluded that the Legislature did not intend to include a corrupt intent element. *Id*. This Court noted that other sections of the MFCA and the HCFCA included a knowledge element, thus evincing a legislative intent not to include a corrupt intent element in the offenses at issue. *Id*. at 213-214. "When construing a statute, this Court may not assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then on the basis of that assumption, apply what is not there." *Id*. at 213 (quotation marks and citation omitted).

> The absence of a corrupt intent element in the instant offenses also furthers the underlying purposes of the MFCA and HCFCA by criminalizing conduct that fosters false claims. By their plain terms, MCL 400.604 and MCL 752.1004 criminalize the receipt of referral fees. The blanket prohibitions make those who engage in the business of providing goods and services responsible for ensuring that no referral fees are paid because they are in the best position to do so. Accordingly, the Legislature did not intend a corrupt intent element in these offenses. [*Id*. at 214.]

This Court further explained that the offenses at issue were ones of general rather than specific intent, i.e., "[t]he requisite intent is the intent to do the prohibited physical act, i.e.[,] to receive a referral fee." *Id*. at 215.

See also *People v Roby*, 52 Mich 577, 579; 18 NW 365 (1884) ("Many statutes which are in the nature of police regulations . . . impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."); *Pace*, 311 Mich App at 6-7 (strict liability offenses are disfavored, but the Legislature has authority to enact such offenses, and whether it intended to do so is a matter of statutory interpretation); *People v Ramsdell*, 230 Mich App 386, 392-399; 585 NW2d 1 (1998) (concluding that the crime of prisoner in possession of contraband, MCL 800.281(4), was a strict liability crime because the Legislature did not include a knowledge or intent element in the statute, and particularly given that another statute proscribing the possession of controlled substances included language setting forth a knowledge or intent requirement).

In the present case, defendant has failed to establish that an intent or knowledge element in addition to that set forth in the trial court's instruction is required. Again, the trial court's instruction *already* requires that defendant *knowingly* possessed, acquired, offered for sale, or transported tobacco products other than cigarettes. In the trial court, defendant offered a proposed instruction that would have required proof that defendant knew he was required to have a license in order to transport tobacco products and that he specifically intended to violate the TPTA. On appeal, defendant appears to have abandoned the request to include those elements in the jury instruction. And those elements are not included in his proposed instruction in his appellate brief, which defendant acknowledges differs from his proposed instruction below. Defendant has failed to adequately present an appellate argument in support of his proposed instructions filed below; consequently, he has abandoned any claim that he is entitled to the elements set forth in those proposed instructions. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Moreover, there is no support in *Nasir* or other case law for defendant's contention below that the prosecutor had to prove that defendant knew he was required to have a license and that he specifically intended to violate the TPTA. Rather, as discussed above, the *mens rea* element required by *Nasir* is that the defendant had knowledge that the stamp was counterfeit. *Nasir*, 255 Mich App at 45-46. That is, the defendant was required to have knowledge of what it was that he possessed, which is consistent with the general intent element requiring that one have the requisite intent to do the prohibited physical act. See *Motor City Hosp*, 227 Mich App at 215. Indeed, this Court in *Nasir* explicitly rejected the proposition that the offense in MCL 205.428(6) contained a specific intent element and concluded that the prosecutor did not have to prove that the defendant knew that he lacked the authorization of the Michigan Department of Treasury. *Nasir*, 255 Mich App at 46. Accordingly, defendant's suggestion below that *Nasir* should be read to require proof in this case that defendant knew he was required to have a license to transport tobacco products and that he specifically intended to violate the TPTA is utterly without any support from the holding in *Nasir*, in addition to lacking any basis in the language of MCL 205.428(3). The trial court's instruction in this case, by requiring proof that defendant *knowingly* possessed tobacco products other than cigarettes, effectuates the notion of general intent discussed earlier and is consistent with the general intent element deemed necessary for the offense at issue in *Nasir*. Defendant has cited no authority requiring a specific intent element in this case and, again, appears to have abandoned on appeal his argument below that such an element is required.

-6-

And as discussed later, a transporter of tobacco such as defendant is required by MCL 205.426(7) and (8) to have *in his possession* a transporter license and a permit for the load. Given defendant's statutory responsibility to have the license and permit *in his possession*, he was in a position to know whether he had the requisite license and permit, thereby undercutting defendant's claim that the prosecutor must prove his knowledge regarding the licensure requirement. Cf. *Quinn*, 440 Mich at 197-198 (knowledge of a firearm being loaded is not an element of MCL 750.227c; the statute imposes on a person who transports a firearm the duty to ensure that the firearm is unloaded and to inspect the firearm before transporting it); *Motor City Hosp*, 227 Mich App at 214 (the prohibitions on the receipt of referral fees in the MFCA and HCFCA "make those who engage in the business of providing goods and services responsible for ensuring that no referral fees are paid because they are in the best position to do so. Accordingly, the Legislature did not intend a corrupt intent element in these offenses.").

On appeal, defendant presents a confusing argument concerning a presumption contained in MCL 205.426(6). But that presumption is wholly inapplicable to the issues here. MCL 205.426(6) provides in relevant part:

> If a tobacco product other than cigarettes is found in a place of business or otherwise in the possession of a wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transporter, or retailer without proper markings on the shipping case, box, or container of the tobacco product or if an individual package of cigarettes is found without a stamp affixed as provided under this act or if a tobacco product is found without proper substantiation by invoices or other records as required by this section, the presumption shall be that the tobacco product is kept in violation of this act.

Defendant says that he was arguably a transporter of tobacco products other than cigarettes and concedes that LZ Distribution, LLC (LZ), the entity that defendant claims was his employer,[3] apparently did not obtain a transporter license.[4] Defendant suggests, therefore, that his failure to have proper records or invoices created a rebuttable presumption that the tobacco products were kept in violation of the TPTA. Defendant says that the trial court's instruction is inappropriate because it eliminates his ability to rebut the presumption in MCL 205.426(6).

Defendant fundamentally misunderstands the language of MCL 205.426(6). The statute provides that if a tobacco product lacks proper markings or proper substantiation by invoices or other records, then it is presumed that the tobacco product is kept in violation of the TPTA. Defendant apparently assumes that his lack of licensure equates to a lack of proper substantiation by invoices or other records. Defendant fails to explain how he concludes that the failure to have a license comprises a lack of proper substantiation by records. "An appellant may not merely

---

[3] The prosecutor disputes defendant's claim that he was employed by LZ, noting that defendant had his own tobacco business and that his license was revoked before the incident in this case.

[4] The prosecutor disputes defendant's claim that he was employed by LZ, noting that defendant had his own tobacco business and that his license was revoked before the incident in this case.

announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. MCL 205.426(1) refers to "records" as including "a written statement containing the name and address of both the seller and the purchaser, the date of delivery, the quantity, the trade name or brand, and the price paid for each tobacco product purchased." Records also include "a true copy of all purchase orders, invoices, bills of lading, and other written matter substantiating the purchase or acquisition of each tobacco product . . . ." MCL 205.426(1). There is no indication in the statute that a license itself constitutes a record for the purpose of the presumption in MCL 205.426(6). The statutory reference to substantiation of the purchase or acquisition of each tobacco product indicates that the license itself is not the type of record contemplated in this statutory provision. Even if the presumption applied to the failure to have a license, the presumption does not pertain to the defendant's state of mind. Instead, the presumption that arises is that the tobacco product is being kept in violation of the TPTA. Defendant's confusing argument that the presumption in MCL 205.426(6) is relevant to establishing the proper *mens rea* element for a violation of MCL 205.428(3) is meritless.

Defendant further contends that the trial court's instruction is inappropriate because the requirement of having a transporter license applies to a business rather than a driver or employee of the business. According to defendant, a driver or employee is not in a position to know whether a transporter license is needed. Defendant's argument assumes that he is a mere driver or employee of LZ. The prosecution indicates it will present evidence at trial disputing defendant's claim that he was employed by LZ, and will show that, in fact, defendant had his own business and had recently lost his tobacco license before this particular incident. The case is currently in an interlocutory posture, and this Court need not address or resolve whether defendant was employed by LZ.[5] Regardless of whether defendant was employed by LZ, defendant was required by MCL 205.426(7) and (8) to have in his possession a transporter license and a permit for the load in his possession. Defendant's contention that he lacked a means of determining the licensure status of his purported employer is thus incorrect in light of his statutory responsibility to have the required license and permit in his possession when transporting the tobacco product.

Moreover, MCL 205.423(1) provides that "a person shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer, wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transportation company, or transporter in this state unless licensed to do so." " 'Transporter' means a person importing or transporting into this state, or transporting in this state, a tobacco product obtained from a source located outside

---

[5] The prosecutor argues that LZ lacked a transporter license and that defendant was therefore not transporting under either an independent transporter license of his own or a transporter license of his purported employer, LZ, in violation of MCL 205.423(1). The prosecutor explains that although LZ had a license as an unclassified acquirer of tobacco products other than cigarettes, LZ did *not* have a transporter license or a permit to transport the tobacco from Ohio to Michigan. See MCL 205.423(2) (stating, in relevant part, that "[i]f a person acts in more than 1 capacity at any 1 place of business, a license shall be procured *for each capacity*.") (emphasis added).

this state, or from any person not duly licensed under this act." MCL 205.422(y). " 'Person' means an individual, partnership, fiduciary, association, limited liability company, corporation, or other legal entity." MCL 205.422(o). Because a "transporter" includes a "person" who transports a tobacco product from a source outside the state and because a "person" includes an individual, defendant's suggestion that he could not qualify as a "transporter" is inconsistent with the statutory definitions.[6] Further, as discussed, MCL 205.426(7) requires a "transporter" to have the license "in his or her actual possession" while transporting or possessing the tobacco product, and MCL 205.426(8) likewise requires a "transporter" to have the permit for a specific load "in his or her possession[]" while possessing the tobacco product. These statutory provisions thereby further confirm that an individual may be a "transporter" under the TPTA.

In support of his contention that the transporter license requirement applies only to businesses and not individuals, defendant relies on language in the Department of Treasury's license application form that describes a transporter as "[a] business that imports or transports into this state, or transports in this state, cigarettes or other tobacco products obtained from a source located outside this state, or obtained from a person that is not a Michigan tobacco tax licensee." This document is not in the lower court record. A party may not expand the record on appeal. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013), citing *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). Defendant fails to acknowledge that the license application form is not in the lower court record or to address whether it constitutes a type of document of which this Court may take judicial notice. See MRE 202(a) (permitting a court to take judicial notice of regulations of governmental agencies). It is not this Court's role to undertake on its own a party's argument. *Kelly*, 231 Mich App at 640-641. In any event, a state agency's interpretation of a statute, although entitled to respectful consideration, is not binding on courts and cannot conflict with the legislative intent expressed in a statute's plain language. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008). As discussed, the plain language of the TPTA supports the conclusion that an individual may be a "transporter." A governmental agency's statement on a form cannot supersede the statutory text.

We affirm.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Riordan

---

[6] Defendant at one point of his appellate brief concedes that he "arguably was a transporter of other tobacco products." And defendant also acknowledges that a driver could be charged and convicted of violating the TPTA. These concessions are inconsistent with defendant's suggestion that only a business could qualify as a transporter.