PEOPLE v NASIR

Docket No. 225705. Submitted June 4, 2002, at Detroit. Decided January 14, 2003, at 9:15 A.M.

Ahmed Nasir was convicted by a jury in the Wayne Circuit Court, Ulysses W. Boykin, J., of possessing or using counterfeit tax stamps in violation of subsection 8(6) of the Tobacco Products Tax Act, MCL 205.428(6), after police officers found counterfeit tax stamps affixed to tobacco products sold in a store he managed. The defendant appealed, alleging error in the failure to instruct the jury that the prosecution must prove that the defendant knew the stamps were counterfeit and that the defendant had a specific intent to violate the act.

The Court of Appeals *held*:

Knowledge is an element of the offense. In order to establish that a defendant is guilty of possessing or using a counterfeit tax stamp, the prosecution must prove that the defendant possessed or used a counterfeit stamp, or a writing or device intended to replicate a stamp, that the defendant possessed or used the counterfeit tax stamp, or a writing or device intended to replicate a stamp, with knowledge that the stamp, writing, or device was not an authentic tax stamp, and that the defendant acted without authorization of the Michigan Department of Treasury. The Legislature did not intend that the offense contain a specific intent element or that the defendant act with knowledge that the defendant's act is not authorized by the Michigan Department of Treasury. The judgment of conviction must be reversed and the matter must be remanded for a new trial.

Reversed and remanded.

METER, J., dissenting, stated that the conviction should be affirmed on the basis that the statute is clear and does not include an element of intent or knowledge. The Legislature chose to enact a statute creating a strict-liability offense.

1. CRIMINAL LAW — STATUTES — ELEMENTS — FAULT.

The Court of Appeals, in interpreting a statute in which the Legislature has not expressly included language indicating that fault is a necessary element of a crime, focuses on whether the Legislature nevertheless intended to require some fault as a predicate to find-

ing guilt; factors commonly considered for such an examination include whether the statute at issue is a codification of a common-law offense having a fault element, whether the statute defines a public welfare offense, whether the punishment provided in the statute and the danger that conviction poses to a defendant's reputation is severe, and the burden prosecutors would face if the statute were read to include a fault element.

2. CRIMINAL LAW — TOBACCO PRODUCTS TAX ACT — COUNTERFEIT TAX STAMPS.

Knowledge is an element of the offense of possessing or using counterfeit tobacco products tax stamps; a conviction must be supported by proof that the defendant possessed or used a counterfeit stamp, or a writing or device intended to replicate a stamp, with knowledge that the stamp, writing, or device was not an authentic tax stamp, and that the defendant acted without authorization of the Michigan Department of Treasury; the offense does not contain a specific intent element and the defendant need not act with the knowledge that his act is without the authorization of the Michigan Department of Treasury (MCL 205.428[6]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Daniel M. Levy*, Assistant Attorney General, for the people.

*John D. Lazar* and *Jerome A. Moore* for the defendant.

Before: HOLBROOK, JR., P.J., and GAGE and METER, JJ.

HOLBROOK, JR., P.J. Defendant appeals as of right from his jury trial conviction of possessing or using counterfeit tax stamps, MCL 205.428(6). Defendant was sentenced to 18- to 120-months' imprisonment. We reverse and remand for a new trial.

In April 1999, two Michigan State Police officers assigned to the State Police Tobacco Tax Unit conducted an administrative inspection of the Ridgeway Party Store. Defendant, the store manager, was the only employee present. Upon examination, one of the officers determined that counterfeit tax stamps were

affixed to a number of the tobacco products being sold.

Defendant requested that the jury be instructed as follows on the elements of the offense of possessing or using counterfeit cigarette tax stamps: "The elements of the offense with which the defendant is charged are these: (1) possession of counterfeit stamps; or (2) use of counterfeit stamps; (3) knowledge on defendant's part that the stamps are counterfeit; (4) a specific intent on defendant's part to violate the Michigan Tobacco Tax Act." The prosecution opposed this proposed instruction, arguing that the statute creates a strict-liability offense. The court agreed, and instructed the jury that the prosecution had to prove beyond a reasonable doubt that defendant possessed or used a counterfeit stamp at the Ridgeway Party Store without the authorization of the Michigan Department of Treasury.

Of central importance to this appeal is the issue whether the Legislature intended to dispense with a mens rea or fault requirement when creating this offense. While strict-liability offenses are generally disfavored, *United States v United States Gypsum Co*, 438 US 422, 438; 98 S Ct 2864; 57 L Ed 2d 854 (1978); *People v Lardie*, 452 Mich 231, 240; 551 NW2d 656 (1996), the Legislature's authority to create strict-liability offenses is firmly rooted, *Id.*; *People v Roby*, 52 Mich 577, 579; 18 NW 365 (1884). As with all questions of statutory interpretation, when determining whether a statute imposes strict liability, our primary goal is to determine and effectuate the Legislature's intent. *Lardie, supra* at 239. "The starting place for the search for intent is the language used in the statute." *Bio-Magnetic Resonance, Inc v Dep't of Pub*

*Health*, 234 Mich App 225, 229; 593 NW2d 641 (1999). MCL 205.428(6) reads:

> A person who manufactures, possesses, or uses a stamp or manufactures, possesses, or uses a counterfeit stamp or writing or device intended to replicate a stamp without authorization of the department, or a licensee who purchases or obtains a stamp from any person other than the department, is guilty of a felony and shall be punished by imprisonment for not less than 1 year or more than 10 years and may be punished by a fine of not more than $50,000.00.

Clearly, the statute does not include a fault element. The single reference to intent does not come in the context of describing a particular mens rea. Rather, it is used to identify the type of writing or device[1] prohibited under the statute, i.e., a writing or device designed to replicate an authentic stamp. The failure to include a fault element in a statute does not end the inquiry, however. As our Supreme Court observed in *Lardie, supra* at 239, "In interpreting a statute in which the Legislature has not expressly included language indicating that fault is a necessary element of a crime, this Court must focus on whether the Legislature nevertheless intended to require some fault as a predicate to finding guilt." Courts commonly consider certain factors when making such an examination. See *People v Quinn*, 440 Mich 178, 190 n 14; 487 NW2d 194 (1992).

First and foremost, courts consider whether the statute at issue is a codification of the common law.

---

[1] The supplied definition for "counterfeit stamp" already includes the notion that it is intended to replicate an authentic stamp, and thereby "evidence[], or purports to evidence, the payment of any tax levied under" the Tobacco Products Tax Act. MCL 205.422(c).

"[W]here mens rea was a necessary element of the crime at common law, [we] will not interpret the statute as dispensing with knowledge as a necessary element." *Id.* at 186. See also *Morissette v United States*, 342 US 246, 252; 72 S Ct 240; 96 L Ed 288 (1952). The crime of possessing or using counterfeit tax stamps is not a creature of the common law. Defendant argues that it derives from the common-law crime of forgery, and thus should include a mens rea element.[2] We disagree. While elements of forgery inform MCL 205.428(6), it is at its heart a revenue statute, designed to assure that tobacco taxes levied in support of Michigan schools are not evaded.

Courts also consider whether the statute defines a public welfare offense. *Morissette, supra* at 255; *Lardie, supra* at 240. As Justice COOLEY observed in *Roby, supra* at 579, "Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible." Examples of such strict-liability offenses include narcotics laws, traffic laws, adulterated food or drug laws, criminal nuisances, and liquor control laws. See *Morissette, supra* at 256; *Quinn, supra* at 188; LaFave & Scott, Criminal Law (2nd ed, 1986), § 3.8, p 242 n 1.

MCL 205.428(6) is a revenue provision, not a public welfare law. The statute is not designed to place the burden of protecting the public welfare on an "otherwise innocent" person, *United States v Dotterweich*,

---

[2] "The common-law definition of 'forgery' is 'a false making, or a making *malo animo,* of any written instrument with intent to defraud.'" *People v Warner*, 104 Mich 337, 340; 62 NW 405 (1895).

320 US 277, 281; 64 S Ct 134; 88 L Ed 48 (1943), who is in a position to prevent an injury to the public welfare "with no more care than society might reasonably expect . . . ." *Morissette, supra* at 256. While the regulation of the sale and consumption of cigarettes is a public health concern, this statute only tangentially touches on these matters. In 1997, the Tobacco Products Tax Act, MCL 205.421 *et seq.*, was amended in order to deal with what was identified as the substantial and widespread smuggling of cigarettes into Michigan in order to circumvent the tax levied on each pack of cigarettes. To combat this problem, the Legislature enacted a tax stamp program, 1997 PA 187, which included the creation of the offense in issue.

We also believe that the punishment provided for in the statute and the danger that conviction poses to a defendant's reputation is severe. *Morissette, supra* at 256; *Lardie, supra* at 255. In *Quinn*, our Supreme Court cited LaFave, *supra*, for the treatise's summary "of factors courts have considered important in interpreting statutes empty of words denoting fault . . . ." *Quinn, supra* at 190 n 14. Regarding the severity of punishment, LaFave observes that "[o]ther things being equal, the greater the possible punishment, the more likely some fault is required . . . ." LaFave, *supra*, p 244.[3] Violation of MCL 205.428(6) is a felony punishable by a maximum term of imprisonment of ten years and a possible fine of up to $50,000. With some obvious and notable exceptions, this is not the type of punishment typical of public welfare offenses.

---

[3] As our discussion indicates, the other indicators present do not equally point to the conclusion that the Legislature intended this to be a strict-liability offense.

See *Staples v United States*, 511 US 600, 616; 114 S Ct 1793; 128 L Ed 2d 608 (1994) (observing that the Court's conclusion that a mens rea requirement should be read into the statute in issue is supported by the fact that the potential term of imprisonment for violation of the statute is ten years). Further, the statute mandates a prison term of not less than one year. Additionally, while not quantifiable, we believe the damage the proscribed punishment could potentially inflict to a defendant's reputation is more in keeping with the notion that such a defendant is guilty of some level of fault greater than what typically accompanies a strict-liability offense. "After all, 'felony' is, as we noted in distinguishing certain common-law crimes from public welfare offenses, " 'as bad a word as you can give to man or thing." ' " *Id.* at 618, quoting *Morissette, supra* at 260, quoting 2 Pollock & Maitland, History of English Law (2d ed, 1899), p 465.

Connected to the severity of the potential punishment is the real possibility that to read the statute as not including a mens rea element would lead to the criminalization of "a broad range of apparently innocent conduct." *Liparota v United States*, 471 US 419, 426; 105 S Ct 2084; 85 L Ed 2d 434 (1985). For example, because the statute punishes possession of counterfeit tax stamps, a strict reading of the statute would render criminal the possession by a retail customer of a pack of cigarettes bearing a counterfeit tax stamp. We do not believe that the Legislature intended that this potential problem would be regulated solely by prosecutorial discretion.

We also do not believe that the potential harm to the public at large is of such severity that we should

presume the Legislature intended to impose liability without fault. In observing that the immediate harm[4] attendant to a violation of MCL 205.428(6) is basically the loss of potential revenue, we do not intend to minimize the effect of that harm. We simply note that it is not the type of immediate harm to the public welfare that is common to many strict-liability offenses. For example, the prospective immediate harm imposed by the sale of adulterated food is both widespread and potentially devastating to the people and families injured by the contaminated food.

Finally, we do not believe that prosecutors would face an oppressive burden if the statute were read to include a fault element. Unlike traffic law violations, we do not see the potential number of prosecutions arising from this statute to be overwhelmingly large. Nor do we believe that proving a fault element would be so difficult that strict liability should be imposed. See *Quinn, supra* at 197. Proving an actor's state of mind is difficult in virtually all criminal prosecutions. *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). Indeed, this recognized difficulty has led to the rule that "minimal circumstantial evidence is sufficient" to establish a defendant's state of mind. *Id.* We do not believe that proving that a defendant charged with violating MCL 205.428(6) had a certain state of mind is so difficult that it cannot be established through minimal circumstantial evidence.

Accordingly, we hold that knowledge is an element of the offense of which defendant stands convicted. Therefore, in order to establish that a defendant is

---

[4] As opposed to the more indirect harm posed to the social order by the engagement in any conduct labeled criminal by society.

guilty of possessing or using counterfeit tax stamps, the prosecution must prove that (1) the defendant possessed or used (2) a counterfeit stamp, or a writing or device intended to replicate a stamp, (3) that the defendant possessed or used the counterfeit tax stamp, or a writing or device intended to replicate a stamp, with knowledge that the stamp, writing, or device was not an authentic tax stamp, and (4) that the defendant acted without authorization of the Michigan Department of Treasury. We do not believe that the Legislature intended that the offense contain a specific intent element, nor do we believe that a defendant need act with knowledge that the defendant does so without the authorization of the Michigan Department of Treasury. We also conclude that any potential due process problem is remedied by the inclusion of the above fault element in the prima facie case. *Lardie, supra* at 260-261.

While the failure to instruct on an element of the offense of which a defendant stands convicted does not require automatic reversal, *Neder v United States,* 527 US 1, 9; 119 S Ct 1827; 144 L Ed 2d 35 (1999), we believe that reversal is required in the case at bar. See *People v Wilson,* 159 Mich App 345, 351-352; 406 NW2d 294 (1987). In *California v Roy,* 519 US 2, 7; 117 S Ct 337; 136 L Ed 2d 266 (1996), Justice Scalia observed in his concurring opinion that "a criminal defendant is constitutionally entitled to a *jury verdict* that he is guilty of the crime . . . . A jury verdict that he is guilty of the crime means, of course, a verdict that he is guilty of *each necessary element* of the crime." (Citing his authored majority opinions in *Sullivan v Louisiana,* 508 US 275; 113 S Ct 2078; 124 L Ed 2d 182 [1993], and *United States v Gaudin,* 515 US

506; 115 S Ct 2310; 132 L Ed 2d 444 [1995].) Defendant in the case at bar was never found guilty of "each necessary element" of possessing or using counterfeit tax stamps because the jury was never instructed on the mens rea of the offense.

We also believe that reversal is required because of the paucity of evidence in the record on the issue of defendant's state of mind. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). Mindful of our responsibilities as an appellate count, where a jury has not decided the fault element of the charged offense because of improper instructions, we will not sit as alternate triers of fact and draw inferences from the record that support a conclusion that a defendant acted with the requisite state of mind. This is particularly true where the proofs presented on both sides were shaped by the position taken by the trial court that the disputed mens rea was not an element of the offense.

Accordingly, we reverse and remand for a new trial. Because of the resolution of the issues discussed, we need not reach the other issues raised by defendant on appeal. We do not retain jurisdiction.

GAGE, J., concurred.

METER, J. (*dissenting.*) I respectfully dissent because I believe that applying MCL 205.428(6) according to its plain meaning best effectuates the Legislature's intent. I would affirm.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999). As noted in *People v Venticinque*, 459 Mich 90, 99; 586 NW2d 732 (1998), the Legis-

lature is presumed to have intended the meaning it plainly expressed. If the plain and ordinary meaning of the language in a statute is clear, judicial construction is generally not permitted. *People v Philabaun*, 461 Mich 255, 261; 602 NW2d 371 (1999).

As noted by the majority, MCL 205.428(6) clearly does not include an element of intent or knowledge. Given that many other criminal statutes do include elements of intent or knowledge, I conclude that the Legislature was aware of the consequences of the language employed in MCL 205.428(6) and consciously chose to enact a statute creating a strict-liability crime. See, generally, *People v Ramsdell*, 230 Mich App 386, 392; 585 NW2d 1 (1998). In *Ramsdell, supra* at 391, this Court rejected the defendant's contention that an element of knowledge be imputed to the crime of being a prisoner in possession of contraband, MCL 800.281(4). Significantly, the Court stated:

> The word "knowingly" is absolutely absent from the statute as enacted by the Legislature and signed into law by the Governor.
>
> Defendant's position implicitly suggests that that Legislature did not know quite what it was doing when it enacted MCL 800.281(4) . . . . We disagree; the Legislature is presumed to be aware of the consequences of the use, or omission, of language when it enacts the laws that govern our behavior. [*Ramsdell, supra* at 392.]

As noted in *People v Lardie*, 452 Mich 231, 240; 551 NW2d 656 (1996), states may punish certain acts or omissions regardless of the actor's intent. Given this recognized authority of the Legislature to enact strict-liability crimes, and given the clear absence of an element of intent or knowledge from the statute at issue in this case, I see no reason to contravene the plain

meaning of the statute and the clear legislative intent by imputing an additional element to the crime in question.

Citing *People v Quinn*, 440 Mich 178, 190 n 14; 487 NW2d 194 (1992), the majority contends that an element of knowledge must be imputed to MCL 205.428(6) because the statute is not a public welfare law, because it exposes a defendant to severe punishment, because it has the potential to criminalize a broad range of apparently innocent conduct, and because the burden on prosecutors to prove guilty knowledge would not be oppressive. In response, I note that providing funding for schools, which the Tobacco Products Tax Act, MCL 205.421 *et seq.*, does, is indeed a matter of public welfare,[1] and requiring prosecutors to prove guilty knowledge would increase the chances of fraudulent avoidance of the tax. Moreover, while the penalty under MCL 205.428(6) is potentially severe, I note that in *People v Motor City Hosp & Surgical Supply, Inc*, 227 Mich App 209, 210; 575 NW2d 95 (1997), this Court upheld a strict-liability crime despite a potential punishment of four-years' imprisonment and a $30,000 fine.[2] Accordingly, a potentially severe penalty does not automatically mandate the imputation of an intent or knowledge element to a strict-liability crime. With regard to the notion that MCL 205.428(6) potentially punishes a range of apparently innocent conduct, I note simply that this argument could be made in the

---

[1] Moreover, the statute in question concerns the public health and safety because it involves the regulation of tobacco products. See, generally, *People v Asta*, 343 Mich 507, 515; 72 NW2d 282 (1955).

[2] See also *Ramsdell, supra* at 391, involving a strict-liability crime with a potential punishment of five years' imprisonment under MCL 800.285(1).

context of any strict-liability offense. For example, the statute at issue in *Ramsdell, supra* at 391, punishes a prisoner for possessing contraband even if the prisoner did not know the true nature of the item he possessed. I do not find the majority's argument a persuasive reason for ignoring the clear legislative intent expressed in MCL 205.428(6). In short, I do not believe that an analysis of the factors listed in *Quinn, supra* at 190 n 14, mandates the imputation of a knowledge element to MCL 205.428(6).

Because I conclude that MCL 205.428(6) should be enforced as written, and because I find no merit to the additional issues defendant raises on appeal, I would affirm.