# STATE OF MICHIGAN

# COURT OF APPEALS

VALUE, INC.,

                    Plaintiff-Appellee/Cross-Appellant,

v

DEPARTMENT OF TREASURY,

                    Defendant-Appellant/Cross-
                    Appellee.

FOR PUBLICATION
August 1, 2017
9:00 a.m.

No. 331581
Oakland Circuit Court
LC No. 2015-144863-AA

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Department of Treasury, and plaintiff, Value, Inc., cross-appeal by right the circuit court's orders (1) requiring the Department to return one half of the value of certain "other tobacco product" (OTP) seized from Value under the Tobacco Products Tax Act (TPTA), MCL 205.421 *et seq.*; and (2) denying Value's request for a return of approximately $24,000 in taxes paid on the seized OTP. The Department contends that the circuit court erred by finding that the seized product or the value of the seized product had to be returned, either in whole or in part, to Value. Value argues that the circuit court erred by only awarding half of the product's value and by not awarding the taxes paid on the product. We reverse and remand for further proceedings.

## I. BASIC FACTS

On November 3, 2014, the Michigan State Police, acting on behalf of the Department of Treasury, conducted an inspection of Value's facility in Oak Park. After observing various purported violations of the TPTA, the officers seized approximately $77,000 in OTP from Value. On December 8, 2014, a referee at the Department of Treasury conducted a hearing concerning whether the Department legally seized the OTP and whether the OTP should be forfeited to the state. At the hearing, the Department argued, in part, that Value violated MCL 205.426(6) by possessing OTP that failed to identify the first purchaser of the product. The Department asserted that law enforcement therefore properly seized the OTP and that it should be forfeited.

-1-

Value argued that it purchased the OTP from Basik Trading,[1] that Basik had removed the required labels, that Value had invoices to prove that the purchases were made legally, and that the product should be returned. Following the hearing, the referee concluded that the seizure and forfeiture were lawful and that the product should not be returned. The referee reasoned that it was undisputed that the OTP lacked the required markings, so the OTP was lawfully seized and subject to forfeiture under MCL 205.429. On December 18, 2014, the Department of Treasury's hearings division administrator, acting on behalf of the Department, adopted the referee's recommendation in a Decision and Order of Determination.

On January 6, 2015, Value filed a complaint in circuit court, seeking under MCL 205.429(4), "a judicial determination of the lawfulness of the seizure and forfeiture." On November 18, 2015, in response to competing motions for summary disposition, the court found that contrary to MCL 205.426(6), the OTP lacked the name and address of the person making the first purchase. The court, however, found that the Department had conceded that the required taxes had been paid on the product, thereby overcoming the presumption in MCL 205.426(6) that the OTP was held by Value in violation of the TPTA. As a result, the court concluded that Value was entitled to a return of the OTP.[2]

Thereafter, Value contended that the OTP had gone stale or deteriorated while in the care of the Department. Value argued that it was therefore entitled the monetary value of the seized OTP, which it asserted consisted of approximately $77,000 in product value and about $24,000 in taxes paid. The Department countered that the circuit court only had jurisdiction to order the return of the product, and that, in any event, Value was only entitled to the base amount of the product, not a return of the product's value plus the taxes paid on it. The circuit court agreed that, due to spoilage, Value was entitled to receive the value of the product; however, because the court viewed Value as equally at fault for the spoilage, it only awarded Value half the product's value. Further, the court rejected Value's contention that it was entitled to a return on the taxes paid on the product, concluding that the taxable event was Value's purchase of the OTP from an out-of-state distributor, not its anticipated future sales to consumers.

## II. SEIZURE AND FORFEITURE OF OTP UNDER THE TPTA

### A. STANDARD OF REVIEW

The Department argues that the circuit court erred in ordering it to return the product or to return one half of the value of the product because, under MCL 205.426(6) and MCL 205.429,

---

[1] Based on the record, Basik is an out-of-state distributor, and Value was purchasing OTP from it.

[2] The parties could not agree on the language to be included in the court's order effectuating the court's decision on summary disposition. Accordingly, both parties eventually submitted proposed orders to the court. The court concluded that neither order was sufficient and issued an order granting in part and denying in part both parties' motions "for the reasons stated on the record." The court attached the relevant pages of the motion hearing transcript to the order.

the seizure was proper, as was the forfeiture. Value argues that the circuit court erred by only ordering half of the product's value returned and by denying its request for the return of taxes paid on the product. This Court reviews de novo a circuit court's grant or denial of a motion for summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Further, resolution of the issues on appeal involves matters of statutory construction, which are reviewed de novo. *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). "The intent of the Legislature is discerned from the plain language of the statute, affording words their common, ordinary meaning." *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159-160; 645 NW2d 643 (2002). If the language of the statute is unambiguous, this Court presumes that the Legislature intended the meaning clearly expressed, and further judicial construction is neither permitted nor required. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

## B. ANALYSIS

"[T]he TPTA 'is at its heart a revenue statute, designed to assure that tobacco taxes levied in support of Michigan schools are not evaded.' " *People v Beydoun*, 283 Mich App 314, 327; 770 NW2d 54 (2009), quoting *People v Nasir*, 255 Mich App 38, 42; 662 NW2d 29 (2003). The act, which "can aptly be described as a pervasive group of tobacco product regulations[,] . . . contains detailed definitions, licensing and stamping requirements, recordkeeping and document maintenance obligations, schedules of tax rates, civil and criminal penalties for violations of the TPTA, procedures governing seized property, and a delineation of tobacco tax disbursements for various purposes." *Beydoun*, 283 Mich App at 328. Under MCL 205.429(1), "[a] tobacco product held, owned, possessed, transported, or in control of a person in violation of this act, . . . and any related books and records are contraband and may be seized and confiscated by the department as provided in this section." MCL 205.429(2) further provides:

> If an authorized inspector of the department or a police officer has reasonable cause to believe and does believe that a tobacco product is being acquired, possessed, transported, kept, sold, or offered for sale in violation of this act for which the penalty is a felony, the inspector or police officer may investigate or search the vehicle of transportation in which the tobacco product is believed to be located. If a tobacco product is found in a vehicle searched under this subsection or in a place of business inspected under this act, the tobacco product, vending machine, vehicle, other than a vehicle owned or operated by a transportation company otherwise transporting tobacco products in compliance with this act, or other tangible personal property containing those tobacco products and any books and records in possession of the person in control or possession of the tobacco product *may be seized by the inspector or police officer and are subject to forfeiture as contraband as provided in this section*. [Emphasis added.]

Accordingly, in order for the seizure of the OTP to be lawful, Value's possession of the OTP must have violated the TPTA.

The Department contends that Value possessed the OTP in violation of the TPTA. In support, it directs our attention to the first sentence in MCL 205.426(6), which provides: "If a tobacco product other than cigarettes is received or acquired within this state by a wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, or retailer, each original manufacturer's shipping case shall bear the name and address of the person making the first purchase or any other markings the department prescribes." The Department asserts that the seized OTP did not have labels identifying the first purchaser or a tax stamp as prescribed by the Department.

Value, however, argues that it did not possess OTP contrary to the requirements in MCL 205.426(6). In support, it also directs our attention to the statutory language in MCL 205.426(6), which provides in relevant part that OTP "received or acquired" in Michigan by an unclassified acquirer must have "the name and address of the person making the first purchase *or* any other markings that the department prescribes" affixed to "each original manufacturer's shipping case." (Emphasis added). Value contends that because it was required to have either the shipping labels identifying the first purchaser *or* "any other" prescribed markings, it was not actually required to have the shipping labels on the OTP at its facility because it could instead have the other prescribed markings. Value then asserts that it was not required to have *any* markings on the OTP because the Department had not provided any proof that other markings had been prescribed.

Based on our review of the record, the Department required OTP acquired by an unclassified acquirer to have a tax stamp affixed. This requirement is set forth in an application for non-cigarette tobacco products stamp, and provides:

> Only . . . unclassified acquirers receive other tobacco products in original manufacturers' shipping cases. . . .
>
> Since secondary wholesalers, vending machine operators, or retailers are prohibited from possessing other tobacco products in containers that do not bear the proper markings, . . . *unclassified acquirers MUST mark containers they ship to their customers with their OTP stamp.* It is a violation of the Tobacco Products Tax Act (TPTA) for a secondary wholesaler, vending machine operator, or retailer to possess a shipping container without an OTP stamp of its supply source, *and OTP found in unmarked containers can be seized.* [Emphasis added.]

Value contends that the requirement in the application only requires that it affix a tax stamp to the OTP before selling or shipping it to another. However, the application clearly states that OTP in unmarked containers can be seized. More importantly, MCL 205.426(6) provides that other markings prescribed by the Department—such as the tax stamp—must be affixed when the OTP is received or acquired, not when it is shipped or sold. Accordingly, we reject Value's contention that there is no evidence in the lower court record that the tax stamp was not an "other marking" prescribed by the Department under MCL 205.426(6).

Additionally, assuming *arguendo* that the Department wholly failed to prescribe any other markings under MCL 205.426(6), the statute still unambiguously requires either the shipping labels identifying the first purchaser or other markings. In this case, it is unrefuted that the seized OTP had neither.

Next, a violation of MCL 205.426(6) is only a presumed violation of the TPTA.[3] MCL 205.426(6) provides in part:

> If a tobacco product other than cigarettes is found in a place of business or otherwise in the possession of a wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transporter, or retailer without proper markings on the shipping case, box, or container of the tobacco product or if an individual package of cigarettes if found without a stamp affixed as provided under this act or if a tobacco product is found without proper substantiation by invoices or other records as required by this section, the presumption shall be that the tobacco product is kept in violation of this act.

Therefore, if an unclassified acquirer (like Value), has possession of OTP "without proper markings," including labels identifying the first purchaser, as required by MCL 205.426(6), then "the presumption shall be that the tobacco product is kept in violation of this act." Accordingly, because the OTP in this case indisputably failed to identify the first purchaser or to have a stamp affixed to it as prescribed by the Department, Value's possession of the OTP was a presumed violation of the TPTA.[4]

---

[3] The Department seems to suggest that violating MCL 205.426(6) constitutes a violation of the TPTA sufficient to allow the seizure and forfeiture of the OTP kept in violation of § 426(6) without regard to whether the taxes on the seized OTP are paid or unpaid and without regard to whether the unclassified acquirer can establish that it legally obtained the OTP (and so did not violate the TPTA even though it violated § 426(6)). However, given that MCL 205.426(6) expressly provides that a violation of § 426(6) is only a presumptive violation of the TPTA, we reject that interpretation as contrary to the plain language of the statute. If the Legislature had intended that any violation of the recordkeeping requirements in MCL 205.426 would constitute a per se violation of the TPTA, then it would not have included a sentence expressly stating that such a violation was only a presumptive violation of the TPTA. See *Robinson v City of Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010) (stating that we should avoid interpreting a statute in a way that renders any part of the statute surplusage or nugatory).

[4] MCL 205.426(6) requires OTP "received or acquired within this state" to "bear the name and address of the person making the first purchase or any other markings the department prescribes." The statute is silent with regard to who bears the responsibility of ensuring that the proper markings are on the OTP that is received or acquired. However, the plain language of the statute nevertheless requires the markings on receipt or acquisition of the product. Accordingly, even though Value presented evidence showing that the labels identifying the first purchaser had been removed by Basik, that does not change the fact that Value thereafter had "received or acquired" OTP without the required labels. Stated differently, the presumption of a violation of

-5-

Under MCL 205.429(1), "[a] tobacco product held, owned, possessed, transported, or in control of a person in violation of this act, . . . and any related books and records are contraband and may be seized and confiscated by the department as provided in this section." Consequently, because, at the time of seizure, there was a presumed violation of the statute, the seizure of the OTP was lawful.[5]

Because tobacco products seized based on violations of the TPTA are only "subject to forfeiture," the next question is whether the OTP seized in this case should have been forfeited. The statute clearly provides that forfeiture is not automatic. MCL 205.429(2) states:

> If an authorized inspector of the department or a police officer has reasonable cause to believe and does believe that a tobacco product is being acquired, possessed, transported, kept, sold, or offered for sale in violation of this act for which the penalty is a felony, the inspector or police officer may investigate or search the vehicle of transportation in which the tobacco product is believed to be located. If a tobacco product is found in a vehicle searched under this subsection or in a place of business inspected under this act, the tobacco product, vending machine, vehicle, other than a vehicle owned or operated by a transportation company otherwise transporting tobacco products in compliance with this act, or other tangible personal property containing those tobacco products and any books and records in possession of the person in control or possession of the tobacco product may be seized by the inspector or police officer and are subject to forfeiture as contraband as provided in this section.

The plain language of the statute, therefore, provides that OTP possessed in violation of the TPTA is merely *subject* to forfeiture after it has been seized.

MCL 205.429(3) provides that "[a]s soon as possible, but not more than 5 business days after seizure of any alleged contraband, the person making the seizure shall deliver personally or by registered mail to the last known address of the person from whom the seizure was made, if known, an inventory statement of the property seized." The inventory statement, which must be filed with the state treasurer, must "contain a notice to the effect that unless demand for hearing as provided in this section is made within 10 business days, the designated property is forfeited to the state." MCL 205.429(3). Because Value made a demand for a hearing "for a determination as to whether the property was lawfully subject to seizure and forfeiture," the OTP could not be forfeited based on the failure to demand a hearing. See MCL 205.429(3).

---

the TPTA is not negated by the fact that Value took no action to obscure the identity of the first purchaser.

[5] We note that the Legislature provided two forums for a taxpayer to challenge the lawfulness of a seizure, see MCL 205.429(3) and (4), which we believe allows the Department to seize tobacco products even when there is only a presumptive violation of the TPTA. In other words, the Department is not required to provide a pre-seizure opportunity for a taxpayer to rebut the presumption in MCL 205.426(6) because the Legislature has already provide a post-seizure process for doing so.

There is no dispute that in accordance with MCL 205.429(3) a hearing on the lawfulness of the seizure and the possible forfeiture was timely held and resulted in a determination in the Department's favor. The statute provides that, following the hearing before the Department, if it is determined that "the property is lawfully subject to seizure and forfeiture" then, provided "*the person from whom the property was seized or any persons claiming an interest in the property do not take an appeal to the circuit court of the county in which the seizure was made within the time prescribed in this section*, the property seized shall be considered forfeited to the state by operation of law . . . ." MCL 205.429(3) (emphasis added). Here, Value took a timely appeal to the proper circuit court, so forfeiture was not proper under this section of MCL 205.429(3).

In the circuit court, Value presented evidence allegedly showing that it had paid taxes on the seized OTP. It also provided invoices that it argued showed who it had acquired the seized OTP from and why the seized OTP lacked the proper markings. In response, the Department contended that without the required markings on the OTP, i.e., the labels identifying the first purchaser, it could not conclusively determine whether the taxes had actually been paid on the seized OTP or whether they were paid on some other OTP. In support, the Department attached as affidavit from Michigan State Police Trooper Todd Berdan, who stated that without the shipping labels there was no way for him to determine whether the seized OTP came from Basik. He also provided that without the shipping labels, whether the taxes were actually paid on the OTP was essentially a guess or assumption. Berdan explained:

> In my experience with tobacco tax fraud someone is going to have invoices for fraudulently obtained products. You buy good stuff and you buy bad stuff, and you make sure all that stuff is on an invoice. I don't know if that's the case with [Value] but that's—in my experience that is what a good fraud program or operation does, so again, there's no way I can determine whether that box is from Basik, which he has invoices from, or whether it's from Pennsylvania and Yahoo tobacco, without that label, that label tells me who he bought it from.

He further explained that looking at the invoices or calling Basik would not help because "it doesn't tell me that that's the box we're talking about." He added:

> The only way to tell me that box is the box we're either talking about or looking at on the invoice is with that shipping label. Again, if I got one invoice for one box of Swedish Match cigarillos and I've got—get that very box with the shipping label, I sell it, the next day I buy the same box but from a white van, I don't know without that shipping label . . . .

Accordingly, although Value presented evidence that allowed an inference that the seized OTP came from Basik and that it had paid taxes on the seized product, the Department rebutted that evidence with Berdan's affidavit explaining the inherent deficiency of that evidence. As a result, there is a factual dispute with regard to whether the presumption in MCL 205.426(6) could be rebutted by the evidence submitted by Value. Because there was a factual dispute, summary

disposition was inappropriate under MCR 2.116(C)(10).[6]  We therefore reverse the circuit court's order granting in part and denying in part the parties' motions for summary disposition.

On remand, the circuit court shall hold an evidentiary hearing to determine whether Value can rebut the presumption that it possessed the OTP in violation of the TPTA.  In order to rebut the presumption, Value must present evidence establishing (1) that it lawfully obtained the OTP and (2) that it properly paid taxes on the seized OTP.  If the court finds that the presumption in MCL 205.426(6) was rebutted, it may order the return of the seized OTP.[7]  If, however, the court finds that Value cannot rebut the presumption, then it should allow the product to be forfeited.

Reversed and remanded for further proceedings.  Neither party having prevailed in full, we decline to award costs under MCR 7.219(A).  We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[6] We note that Value raised a number of constitutional challenges to the Department's seizure of the OTP in this case.  Value's claim, however, was brought pursuant to MCL 205.429(4), which provides that "[i]f a person is aggrieved by the decision of the department, that person may appeal to the circuit court of the county where the seizure was made to obtain a judicial determination of the lawfulness of the seizure and forfeiture."  The statute further provides that during the proceeding before the circuit court, the circuit court "shall hear the action and determine the issues of fact and law involved in accordance with rules of practice and procedure as in other in rem proceedings."  As such, the constitutional claims should be brought in a separate proceeding.

[7] Given our resolution with regards to the court's decision on summary disposition, we need not address the court's post-summary disposition decision to award Value one half of the seized OTP's value based on evidence that the OTP spoiled while in the Department's possession or the court's decision not to order a tax refund for the taxes allegedly paid on the seized OTP.  We note, however, that under some circumstances the TPTA does allow for a return of the monetary value of seized tobacco products as opposed to a return of the actual tobacco product.  See MCL 205.429(4).