*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN FRANCIS DAVIS,

        Defendant-Appellant.

UNPUBLISHED
February 5, 2019

No. 341621
Ingham Circuit Court
LC No. 17-000406-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GERALD MAGNANT,

        Defendant-Appellant.

No. 341627
Ingham Circuit Court
LC No. 17-000407-FH

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendants appeal two orders, one denying their joint motion to quash the information and one denying their joint motion to dismiss the case for a due process violation. Defendants had been bound over on charges of transporting over 3,000 cigarettes without a license to transport them, contrary to the Tobacco Products Tax Act (TPTA), MCL 205.421 *et seq.*, and more particularly MCL 205.428(3). In denying defendants' motions to dismiss, the circuit court concluded that under *People v Shouman*, unpublished per curiam opinion of the Court of Appeals, issued October 4, 2016 (Docket No. 330383), the statute provided adequate notice that individuals can be transporters in violation of the statute. In denying the motion to quash, the circuit court concluded that there was evidence of at least constructive possession and evidence of knowledge that the truck defendants were driving had illegal cigarettes. Defendants

filed an interlocutory appeal, we granted leave, and the cases were consolidated for administrative efficiency.[1] We now affirm.

## I. BACKGROUND

Defendants were nonsupervisory employees of the Keweenaw Bay Indian Community (KBIC). On December 11, 2015, defendant John Francis Davis was driving a KBIC truck pulling a trailer and defendant Gerald Magnant was a passenger. A Michigan State Police officer pulled the truck over for speeding. During the stop—which did not occur on KBIC property—56 cases of "Seneca" cigarettes were found in the trailer. The cigarettes bore a KBIC stamp but no Michigan Department of Treasury tax stamp. The parties stipulated that there was no record of any tobacco license or transport license for the KBIC, its affiliates, or defendants. Defendant Magnant allegedly admitted that he had helped load the trailer, but there was no indication that either defendant was actually aware that a license was needed to transport the tobacco products under state law.

## II. ANALYSIS

A.     Motion to Quash

On appeal, defendants first argue that the circuit court erred by denying their motion to quash the information, asserting that the statute required not only that they have knowledge that they were transporting cigarettes but also knowledge that it was illegal to transport the tobacco products without a license. They asserted that such knowledge was lacking, and defendant Davis also asserted that, in any event, there was no evidence establishing probable cause to believe that he knew he was transporting cigarettes.

"This Court reviews a trial court's decision on a motion to quash the information for an abuse of discretion." *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010). The trial court abuses its discretion where its decision falls "outside the range of principled outcomes." *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018). We review de novo questions of law. *People v McKerchie*, 311 Mich App 465, 471; 875 NW2d 749 (2015).

In all felony cases, the district court has a duty "to determine whether a crime has been committed and if there is probable cause to believe that the defendant committed it." *People v Laws*, 218 Mich App 447, 451-452; 554 NW2d 586 (1996) (cleaned up). "To bind a criminal defendant over for trial in the circuit court, the district court must find probable cause to believe that the defendant committed a felony." *Shami*, 501 Mich at 250. Probable cause "requires sufficient evidence of each element of the crime charged, or from which the elements may be

---

[1] *People v John Francis Davis*, unpublished order of the Court of Appeals, entered July 18, 2018 (Docket No. 341621); *People v Gerald Magnant*, unpublished order of the Court of Appeals, entered July 18, 2018 (Docket No. 341627).

inferred, to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt." *Id*. at 250-251 (cleaned up).

*Intent to Violate MCL 205.428(3)*. Defendants first argue that, because there was no evidence presented that defendants knew they were required to have a license to transport tobacco products, the district court could not have found probable cause to bind them over on a charge under MCL 205.428(3). We disagree.

The district court found that there was probable cause to believe that defendants violated MCL 205.428(3) of the TPTA, which provides in pertinent part that a "person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes, tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more, 3,000 or more counterfeit cigarettes . . . is guilty of a felony." The purpose of the TPTA is to "regulate and license manufacturers of tobacco products, as well as provide penalties for violations of the act." *Shami*, 501 Mich at 251-252. The Act provides that a "person shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer, wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transportation company, or transporter in this state unless licensed to do so." MCL 205.423(1). Thus, a person possessing a tobacco product as a transporter must be licensed under the Act, and if that person transports a certain value or quantity of tobacco product without a license, then the person is guilty of a felony. *Id*.; see also *Shami*, 501 Mich at 247, 251-252 (addressing who is a "manufacturer" under the TPTA).

Relying on *Shouman*, the circuit court found that the prosecutor was required to prove "[t]hat defendants knowingly transported cigarettes, that defendants did not have a Michigan Department of Treasury license or permit to transport tobacco, and that defendants transported 3,000 or more cigarettes." Defendants argue that, in addition to having knowledge that they were transporting cigarettes, the statute requires that they "must have knowingly possessed or transported cigarettes 'contrary to this act' or with knowledge that they were required to obtain a transporter license but did not do so."

"Criminal intent can be one of two types: the intent to do the illegal act alone (general criminal intent) or an act done with some intent beyond the doing of the act itself (specific criminal intent)." *People v Janes*, 302 Mich App 34, 41; 836 NW2d 883 (2013) (cleaned up). Here, MCL 205.428(3) does not specify an intent requirement. Still, "the omission of any mention of criminal intent must not be construed as eliminating the element from the crime," and, therefore, we must "infer the presence of the element unless a statute contains an express or implied indication that the legislative body wanted to dispense with it." *Id*. at 43 (cleaned up).[2]

Defendants argue that *People v Nasir*, 255 Mich App 38; 662 NW2d 29 (2003), supports their proposition that the intent requirement should have been that "defendants knowingly

---

[2] We note that the default *mens rea* statute enacted by our Legislature, MCL 8.9, does not apply here because the offense was committed before January 1, 2016. MCL 8.9(1). With that said, we agree with the panel's observation in *Shouman* that "it does not appear that the application of MCL 8.9(1) would require a different outcome." *Shouman*, unpub op at 4 n 2.

possessed or transported cigarettes '*contrary to this act*,' i.e., with knowledge that they were required to obtain a transporter license but did not do so" (emphasis added). In *Nasir*, this Court analyzed a different subsection of the TPTA, MCL 205.428(6), which does not contain an explicit fault element, to determine whether the statute provided for strict liability, that is, no requirement to prove intent. *Id*. at 40-41. MCL 205.428(6) provides in pertinent part:

> A person who manufactures, possesses, or uses a stamp or manufactures, possesses, or uses a counterfeit stamp or writing or device intended to replicate a stamp without authorization of the department, a licensee who purchases or obtains a stamp from any person other than the department, or who falsifies a manufacturer's label on cigarettes, counterfeit cigarettes, gray market cigarette papers, or counterfeit cigarette papers is guilty of a felony.

The *Nasir* Court weighed several factors to determine "whether the Legislature . . . intended to require some fault as a predicate to finding guilt." *Nasir*, 255 Mich App at 41. The *Nasir* Court held that "knowledge is an element of the offense of which defendant stands convicted." *Id*. at 45. Specifically, the *Nasir* Court concluded that, to convict under MCL 205.428(6), the prosecutor had to demonstrate that "the defendant possessed or used the counterfeit tax stamp, or a writing or device intended to replicate a stamp, with knowledge that the stamp, writing, or device was not an authentic tax stamp." *Id*. at 45-46.

Defendants argue that, following *Nasir*, the intent element that should have been read into the language of MCL 205.428(3) is a knowing possession of 3,000 or more cigarettes, knowing that the possession was "contrary to" the TPTA. In other words, defendants argue that the statute requires that they have knowledge that a license was required to transport the cigarettes legally. Again, the statute states, "A person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes . . . is guilty of a felony." MCL 205.428(3). Thus, the question is whether the intent of "knowingly," which is not expressly in the act, applies to just the "possession of cigarettes," or to both "the possession of cigarettes" and "contrary to the act."

Notably, in interpreting MCL 205.428(6), the *Nasir* Court concluded, "We do not believe that the Legislature intended that the offense contain a specific intent element, nor do we believe that a defendant need act with knowledge that the defendant does so without the authorization of the Michigan Department of Treasury." *Nasir*, 255 Mich App at 46. Thus, it would be consistent with *Nasir* to interpret MCL 205.428(3) as a general-intent crime requiring only the intent to do the illegal act of transporting the cigarettes without a license, rather than a specific-intent crime requiring the intent to violate the TPTA. Note that *Nasir* requires an intent to do the illegal act alone of possessing or using a counterfeit tax stamp that defendant knew was not authentic, and has as a separate element "that the defendant acted without authorization of the Michigan Department of Treasury." *Id*. This is similar to the circuit court here requiring the prosecutor to demonstrate that defendants knew that they transported cigarettes, and separately that they "did not have a Michigan Department of Treasury license or permit to transport tobacco." Thus, it appears that the phrase, "contrary to the act," included in MCL 205.428(3), describes the unlicensed status of the tobacco transporter, possessor, or manufacturer, rather than the knowledge of the defendants.

-4-

This reading is consistent with the conclusion reached by another panel of this Court in *Shouman*. The *Shouman* Court considered the argument that defendants have made here, and concluded:

> Indeed, this Court in *Nasir* explicitly rejected the proposition that the offense in MCL 205.428(6) contained a specific intent element and concluded that the prosecutor did not have to prove that the defendant knew that he lacked the authorization of the Michigan Department of Treasury. *Nasir*, 255 Mich App at 46. Accordingly, defendant's suggestion below that *Nasir* should be read to require proof in this case that defendant knew he was required to have a license to transport tobacco products and that he specifically intended to violate the TPTA is utterly without any support from the holding in *Nasir*, in addition to lacking any basis in the language of MCL 205.428(3). [*Shouman*, unpub op at 6.]

Even though *Shouman*, as an unpublished case, is not binding on this Court, the *Shouman* panel's thorough analysis of this issue and sound reasoning is persuasive. MCR 7.215(C)(1). Thus, the circuit court's determination that the district court applied an appropriate intent standard to MCL 205.428(3) was not an error of law.

*Knowing Transport of Tobacco Products*. Defendant Davis argues that the district court erred by finding probable cause to believe that he knew that he was transporting cigarettes. The district court found such probable cause because, "taken as a whole, his work assignment, the amount of cigarettes, statements and demeanor viewed on the video indicated [defendant Davis's] knowledge of the cigarettes being transported in the trailer."

At the preliminary examination, Detective Kevin Ryan testified that he witnessed the truck that defendant Davis was driving arrive at a storage area and drive away. Trooper Chris Lajimodiere, who ultimately stopped the truck for speeding, said that defendant Davis told him that he and his passenger, defendant Magnant, were driving to a store in the area and were hauling supplies. According to Trooper Lajimodiere, either defendant Davis or defendant Magnant also told him that they were hauling "chips." At Trooper Lajimodiere's request, defendant Davis unlocked and opened the trailer, exposing numerous cardboard boxes of "Seneca" cigarettes. Trooper Lajimodiere reported that defendant Davis said, "There you go, boss," that he said to defendant Davis, "You knew that stuff was back there," and that defendant Davis replied that he was just a worker and did not pack the trailer. The police seized 56 cases of Seneca cigarettes, each containing 12,000 cigarettes. According to Detective Ryan, while he and another officer were transporting defendant Magnant, defendant Magnant told them that he was involved in loading the cigarettes into the truck and had transported cigarettes for a long time for the KBIC. A videorecording of the traffic stop was entered into evidence.

Defendant Davis argues accurately that, at this stage in the proceedings, the prosecutor has not offered any *direct* evidence that he knew that he was transporting cigarettes. Nonetheless, there was sufficient circumstantial evidence that defendant Davis knew that there were cigarettes in the trailer to bind him over on this charge. Defendant Magnant's statements that he loaded the cigarettes and that his work involved transporting cigarettes for the KBIC were evidence that the truck was being used as a cigarette delivery vehicle at the time it was stopped,

and was circumstantial evidence that defendant Davis, as the driver of the truck, was complicit in delivering what his codefendant knew were cigarettes.

The district court also cited the amount of cigarettes found in the trailer. The sheer volume made it less likely that defendant Davis not know what was in the truck. Additionally, defendant Davis admitted to Trooper Lajimodiere that he was working, and it would be reasonable to infer that defendant Davis was as aware of his work assignment as was defendant Magnant. The district court also cited the statements defendant Davis made to police and his demeanor on the videorecording as evidence that defendant Davis knew that there were cigarettes in the trailer. Thus, there was sufficient circumstantial evidence that defendant Davis knew of the cigarettes to present the question to the jury.

The circuit court did not err by denying defendants' motion to quash the bindover.

### B.     Motion to Dismiss

Defendants next argue that the circuit court erred by denying their motion to dismiss based on their claim that MCR 205.428(3) is unconstitutionally vague. "This Court reviews a trial court's ruling regarding a motion to dismiss for an abuse of discretion." *People v Adams*, 232 Mich App 128, 132; 591 NW2d 44 (1998). We review de novo constitutional issues of law. *People v Hall*, 499 Mich 446, 452; 884 NW2d 561 (2016).

"The 'void for vagueness' doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law." *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011). A statute may be overly vague where "it does not provide fair notice of the conduct proscribed," or is "so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed." *Id*. (cleaned up). "A statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required." *People v Noble*, 238 Mich App 647, 652; 608 NW2d 123 (1999).

Defendants were charged with transporting cigarettes without a license to transport tobacco. As previously stated, MCL 205.428(3) provides in pertinent part that a "person who possesses, acquires, transports, or offers for sale contrary to this act 3,000 or more cigarettes, tobacco products other than cigarettes with an aggregate wholesale price of $250.00 or more, 3,000 or more counterfeit cigarettes . . . is guilty of a felony." MCL 205.423(1) provides, in relevant part, that "a person shall not purchase, possess, acquire for resale, or sell a tobacco product as a manufacturer, wholesaler, secondary wholesaler, vending machine operator, unclassified acquirer, transportation company, or transporter in this state unless licensed to do so." "Person" is defined by MCL 205.422(o) to include "an individual . . . corporation, or other legal entity." Thus, the statutory language of MCL 205.423(1) and MCL 205.428(3) makes clear that an individual possessing 3,000 or more cigarettes for transport, without having a license to do so, is guilty of a felony.

Defendants' vagueness argument focuses not on the language of the relevant statutes, but rather on the interpretation of that language by two Department of Treasury employees. Defendants note that Angela Littlejohn, the manager of the Tobacco Tax Unit, testified that, to

transport tobacco products in Michigan, an individual would have to work for a wholesaler or unclassified acquirer with a transporter's license, be a licensed transporter, or be an interstate commerce carrier. Doug Miller, the administrator of special taxes, clarified that, if a Michigan licensed tobacco wholesaler had an employee transport tobacco to another place in Michigan, the employee would not need an individual tobacco transporter license. Essentially defendants argue that, under these employees' interpretations, the statute does not put them on notice of a potential violation because that violation hinges on whether their employer has obtained the license. We disagree.

First, departmental interpretations of statutes, although entitled to respectful consideration, are not binding on this Court. *D'Agostini Land Company LLC v Dep't of Treasury*, 322 Mich App 545, 558; 912 NW2d 593 (2018). As already discussed, the plain language of the statute indicates that an individual violates the TPTA by possessing for transport large quantities of tobacco without a license. Second, even if the department's interpretations are credited, the statute makes clear that *someone*—either the individual or the individual's employer—must have a license authorizing the possession for transport of a large quantity of tobacco. Thus, the statute is sufficiently clear to put defendants on notice that, if they did not personally hold individual licenses to possess the tobacco for transport, they should have inquired as to whether their employer—the KBIC—held such a license before accepting the load for transport. The statute is not unconstitutionally vague.

The dissent does raise an interesting point based on this Court's decision in *People v Assy*, 316 Mich App 302; 891 NW2d 280 (2016). Ultimately, we conclude that the *Assy* decision is distinguishable from this one. The statute here defines the term "transporter" to include "a person . . . transporting in this state, a tobacco product." MCL 205.422(y). The statute further defines the term "person" to include both individuals and legal entities, MCL 205.422(o), and provides that a "person" can be a "transporter," MCL 205.422(y). Therefore, under a plain reading of the statutory language, an individual driver can be subject to prosecution under the TPTA as a "transporter."

The dissent, however, points to this Court's decision in *Assy* and concludes that the Legislature did not intend to include within the definition of "transporter" any low-level employees, such as those who drive the vehicles transporting cigarettes. In *Assy*, this Court concluded that the term "retailer" did not include "a cashier or stocker," but only included "a person who directs or manages the business." The *Assy* Court reached this conclusion based on the statute's requirement that a "retailer" means a person who "operates a place of business" and read the term "operates" to include an element of direction and control, i.e., "someone who has control over the business's day-to-day operations." *Assy*, 316 Mich App at 310-311. In contrast, the Legislature defined the term "transporter" to include "a person . . . transporting in this state, a tobacco product." The verb "transport" is defined to mean "To carry or convey (a thing) from one place to another." *Black's Law Dictionary* (10th ed.). Contrary to the ordinary meaning of the term "retailer," the ordinary meaning of the term "transport" or "transporter" only requires the physical action of carrying or conveying a thing, in this case, cigarettes. Therefore, this case is distinguishable from *Assy*, in that the ordinary meaning of the term "transporter" reasonably includes the individuals who drive truckloads of cigarettes.

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer