# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

JOSHUA MATTHEW PACE,

        Defendant-Appellee.

FOR PUBLICATION
June 4, 2015
9:00 a.m.

No. 322808
Washtenaw Circuit Court
LC No. 14-000272-AR

Before: WILDER, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

In this interlocutory appeal, the prosecution appeals by leave granted an order entered by the Washtenaw Circuit Court denying plaintiff's application for leave to appeal a district court order which granted defendant's motion for a specific jury instruction. We reverse and remand.

The basic facts of this case are not in dispute. On June 5, 2013, as Michael John Bly, walked across Church Street in Ann Arbor along a pedestrian crosswalk, defendant made a left-hand turn onto Church Street, striking Bly with his vehicle in the process. As a result of the collision, Bly suffered head trauma that left him permanently disabled. Defendant was charged with the misdemeanor offense of committing a moving violation causing serious impairment of a body function pursuant to MCL 257.601d(2).

Prior to trial, defendant moved the district court for a jury instruction requiring the prosecution to prove, as an element of the charged offense, that defendant was negligent in the operation of his vehicle. The prosecution argued, in contrast, that the applicable jury instruction, M Crim JI 15.19, provides that to prove the charge of committing a moving violation causing serious impairment of a body function, the prosecution is required to prove only (1) that the defendant committed a moving violation; and (2) that the defendant's operation of the vehicle caused a serious impairment of a body function to the victim. According to the prosecution, this standard jury instruction accurately stated the law and that there was no requirement that the prosecution also prove that defendant was negligent in his actions. The district court granted defendant's motion, citing *People v Tombs*, 472 Mich 446; 697 NW2d 494 (2005) and reasoning that the Legislature did not expressly indicate that it sought to dispense with negligence as an element of the offense.

-1-

The prosecution subsequently filed an application for leave to appeal the district court's order in the Washtenaw Circuit Court, which denied the application. We granted the prosecution's application for leave to appeal the Washtenaw Circuit Court's denial of its application. In addition to the issue of whether negligence is an element of the offense of committing a moving violation causing serious impairment of a body function, this Court directed the parties to address two additional issues: "(1) if negligence is not an element of committing a moving violation causing serious impairment of a body function, MCL 257.601d(2), then what, if any, mens rea is required for conviction of this offense; and (2) if no mens rea is required, is the statute constitutional?" *People v Pace*, unpublished order of the Court of Appeals, entered October 7, 2014 (Docket No. 322808).

On appeal, the prosecution contends that MCL 257.601d encompasses a pre-existing negligence component such that the district court's requirement of proof of negligence as a separate, distinct element was superfluous and contrary to legislative intent. Alternatively, the prosecution contends that the statute is a constitutional, strict liability offense. We conclude that that the Legislature impliedly intended to make MCL 257.601d a strict liability offense.

Matters of statutory construction are questions of law, which this Court reviews de novo. *People v Williams*, 491 Mich 164, 169; 814 NW2d 270 (2012). Determining the elements of a crime is also a question of law that we review de novo. *People v Holtschlag*, 471 Mich 1, 4-5; 684 NW2d 730 (2004).

MCL 257.601d(2) provides:

(2) A person who commits a moving violation that causes serious impairment of a body function to another person is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

MCL 257.601d(4) states:

As used in this section, "moving violation" means an act or omission prohibited under this act or a local ordinance substantially corresponding to this act that involves the operation of a motor vehicle, and for which a fine may be assessed.

Thus, MCL 257.601d(2) clearly requires the prosecutor to prove (1) the commission of a moving violation; (2) another person suffered a serious impairment of a body function; and (3) a causal link between the bodily injury and the moving violation, i.e., factual and proximate causation. The statutory provision is silent with regard to fault or intent. However, "the failure to include a fault element in the statute does not end our inquiry. Where the statute does not include language expressly requiring fault as an element, this Court must focus on whether the Legislature nevertheless intended to require fault as a predicate to guilt." *People v Adams*, 262 Mich App 89, 93; 683 NW2d 729 (2004).

In *Tombs*, 472 Mich at 452-453, our Supreme Court noted that criminal offenses that do not require a criminal intent are disfavored. "The Court will infer the presence of the element unless a statute contains an express or implied indication that the legislative body wanted to dispense with it. Moreover, the Court has expressly held that the presumption in favor of a

-2-

criminal intent or *mens rea* requirement applies to each element of a statutory crime." *Id*. at 454-455. According to *Tombs*, if there were no mens rea element in a criminal offense, "the statute could punish otherwise innocent conduct." *Id*. at 458.

However, as Justice Cooley early observed in *People v Roby*, 52 Mich 577, 579; 18 NW 365 (1884):

> I agree that as a rule there can be no crime without a criminal intent, but this is not by any means a universal rule. One may be guilty of the high crime of manslaughter when his only fault is gross negligence, and there are many other cases where mere neglect may be highly criminal. Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible.

Our Supreme Court still recognizes that there are circumstances where the lack of criminal intent does not preclude a criminal prosecution. In *Holtschlag*, 471 Mich 1, the Supreme Court was called upon to determine the mens rea associated with manslaughter when the prosecutor proceeded on a theory of gross negligence. Citing to *People v Townsend*, 214 Mich 267, 273-274; 183 NW 177 (1921), and its discussion regarding the proofs necessary to demonstrate the "unlawful-act" theory of involuntary manslaughter and the "lawful-act" theory, the *Holtschlag* court noted that under the "unlawful-act" theory:

> [I]f the defendant committed an *unlawful* act that resulted in death, it is sufficient to allege the commission of the unlawful act and the resulting death whereas, if the defendant committed a lawful act resulting in death, the prosecutor must specifically allege the manner in which the defendant's actions were grossly or culpably negligent. That is, under *Townsend,* lawful-act manslaughter requires that the defendant acted with a mens rea of culpable negligence; whereas unlawful-act manslaughter does not require that the defendant acted with a specific mens rea-all that is required is that the defendant committed the unlawful act. [*Holtschlag*, 471 Mich at 17](emphasis in original).

Thus, as observed in *Holtschlag*, under some circumstances, the fact that a defendant committed an unlawful act has been found sufficient to form the basis of a criminal charge, even where a specific mens rea is absent.

This Court also noted in *People v Janes*, 302 Mich App 34, 42; 836 NW2d 883 (2013), that the Legislature can constitutionally enact offenses that impose criminal liability without regard to fault and that whether the Legislature intended to enact such an offense is generally a matter of statutory interpretation. These offenses, called strict liability offenses, are ones "in which the prosecution need only prove beyond a reasonable doubt that the defendant committed the prohibited act, regardless of the defendant's intent and regardless of what the defendant actually knew or did not know." *Janes*, 302 Mich App at 41-42 (internal quotation marks omitted). The distinction between a strict-liability crime and a general-intent crime is that, for a general-intent crime, the people must prove that the defendant purposefully or voluntarily performed the wrongful act, whereas, for a strict-liability crime, the people merely need to prove

that the defendant performed the wrongful act, irrespective of whether he intended to perform it. *People v Lardie*, 452 Mich 231, 241; 551 NW2d 656, 660-61 (1996), overruled on other grounds by *People v Schaefer*, 473 Mich 418; 703 NW2d 774 (2005).

*Morissette v United States*, 342 US 246; 72 S Ct 240, 246; 96 L Ed 288 (1952) discusses the origin of criminal offense charges which disregard any intent. Citing to the industrial revolution, increased traffic, congestion of cities, and wide distribution of goods, the *Morissette* Court noted that as dangers increased so did duties and regulations and that lawmakers sought to make the duties and regulations more effective by imposing criminal sanctions in some cases. *Id*. at 252-255. These "public welfare offenses" do not necessarily result in a direct or immediate injury to person or property "but merely create the danger or probability of it which the law seeks to minimize." *Morissette*, 342 US at 256.

> [W]hatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does not grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. [Id. at 256.]

The purpose of imposing criminal penalties in this class of regulation is "to require a degree of diligence for the protection of the public which shall render violation impossible." *Id*. at 257. Examples of such strict-liability offenses include narcotics laws, traffic laws, adulterated food or drug laws, criminal nuisances, and liquor control laws. *People v Nasir*, 255 Mich App 38, 42; 662 NW2d 29 (2003).

"Courts in this country have almost universally held that traffic violations are strict liability offenses, in which the motorist's negligence or lack of intent to commit the infraction is irrelevant." *People v Jones*, 132 Mich App 368, 370; 347 NW2d 235 (1984). For example, the Sixth Circuit Court of Appeals addressed an Ohio statute defining involuntary manslaughter as causing death during the commission of a misdemeanor driving offense, without a separate mens rea requirement in *Stanley v Turner*, 6 F3d 399 (CA 6, 1993). The Sixth Circuit noted that:

> [w]here a criminal statute prohibits and punishes conduct not innocent or innocuous in itself, the criminal intent element may be dispensed with if the criminal statute is designed for the protection of the public health and safety and if it has no common law background that included a particular criminal intent. Because citizens are presumed to know the ordinary traffic safety laws and that violating them is dangerous and wrong, Ohio's involuntary manslaughter statute, as applied in this case, is based on the obviously wrongful and blameworthy conduct of violating traffic safety laws. [*Id*. at 404.]

-4-

As the Court in *Stanley* recognized, our Legislature is entitled to enact public welfare statutes, such as those regulating traffic, that dispense with the requirement of mens rea on the basis that citizens are presumed to know the ordinary traffic safety laws and that violating them is dangerous. *Id*.

Based upon the above, it may be inferred from the Legislature's use of the term "moving violation," without any reference to a mens rea requirement, that it intended to dispense with the criminal intent element and make committing a moving violation causing serious impairment of a body function a strict liability offense. The Legislature is presumed to be aware of and to legislate in harmony with existing jurisprudence. *People v Cash*, 419 Mich 230, 241; 351 NW2d 822 (1984). The requirement that a defendant have committed a moving violation in order to be charged with and convicted of a violation of MCL 257.601d clearly indicates that public welfare is at issue. "[I]it is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). The commission of a moving violation indicates that the motorist failed to do so, regardless of intent, and, as previously indicated, the violation of a traffic law is typically a strict-liability offense. *Nasir*, 255 Mich App at 42. Thus, MCL 257.601d is strict liability offense.[1]

---

[1] This conclusion is also supported by the legislative history. We recognize that Legislative bill analyses "are 'generally unpersuasive tool[s] of statutory construction' " and "do not necessarily represent the views of any individual legislator." *Kinder Morgan Mich, LLC v Jackson*, 277 Mich App 159, 170; 744 NW2d 184 (2007) (citation omitted). However, they "do have probative value in certain, limited circumstances." *Id*.

MCL 257.601d was added to the Motor Vehicle Code by 2008 PA 463, effective October 31, 2010. At the same time that MCL 257.601d was added, the offenses of Felonious Driving, MCL 750.325, and Negligent Homicide, MCL 257.626c, were repealed. The Legislative bill analyses, attached to the prosecution's brief, suggest that the changes were made in response to concerns by legislators that

> [t]he current standard for determining whether a person is guilty of negligent homicide or felonious driving is ambiguous, based on whether the person operated the vehicle in a careless, reckless or negligent manner. The language prescribing those offenses is antiquated and based on common law notions of negligence. Applying those concepts to criminal law creates some uncertainty about what constitutes a violation, leading to inconsistent enforcement of the law. For example, a driver who loses control of a car on an icy overpass and is involved in a fatal accident could have foreseen the possibility that the bridge might be icy, and therefore *could* be charged with negligent homicide, although most people would not consider that to be appropriate in such a case. The bill would remove that ambiguity, and instead enact prohibitions under which a person would not be guilty of a criminal offense unless a moving violation had occurred. This would reduce inconsistencies in the application of the law and

Because the Legislature impliedly intended to make MCL 257.601d a strict liability offense, the prosecution is required to prove solely (1) the commission of a moving violation; (2) another person suffered a serious impairment of a body function; and (3) a causal link between the bodily injury and the moving violation, i.e., factual and proximate causation. The prosecution is not required to also prove that defendant operated his vehicle in a negligent manner, and the trial court erred in so concluding.

After reaching the conclusion that the prosecution is not required to prove negligence, we next consider whether MCL 257.601d is constitutional. Constitutional questions are generally reviewed de novo by this Court. *People v Conat*, 238 Mich App 134, 144; 605 NW2d 49 (1999).

"[T]he United States Supreme Court has recognized as a general matter that the constitution does not preclude the enactment of even strict liability criminal statutes." *People v Quinn*, 440 Mich 178, 185; 487 NW2d 194 (1992), citing *Lambert v California*, 355 US 225; 78 S Ct 240; 2 L Ed 2d 228 (1957). See also *Janes*, 302 Mich App at 42, citing *Quinn*, 440 Mich at 188 ("Our Supreme Court has recognized that the Legislature can constitutionally enact offenses that impose criminal liability without regard to fault."). This is especially the case with public welfare regulations, as previously discussed. There does not appear to be a well-settled test for determining when such a strict liability crime offends due process. However, this Court has previously stated that " '[t]he elimination of the element of criminal intent does not violate the due process clause where (1) the penalty is relatively small, and (2) where conviction does not gravely besmirch.' " *People v Olson*, 181 Mich App 348, 352; 448 NW2d 845 (1989), quoting *United States v Wulff*, 758 F 2d 1121, 1125 (CA 6, 1985). See also *Lardie*, 452 Mich at 255 (noting that penalties for public welfare offenses are generally "relatively small" and do no "grave damage to an offender's reputation").

There is no question that the Legislature has the constitutional authority to enact MCL 257.601d as a strict liability offense concerning public welfare. *Lambert*, 355 US 225; *Quinn*, 440 Mich at 188; *Janes*, 302 Mich App at 42. We are satisfied that imposing strict liability for the offense of committing a moving violation causing serious impairment of a body function does not offend due process. First, the offense is a misdemeanor; that is, despite the severe harm that such an offense inflicts upon the victim, it is punishable only by imprisonment for not more than 93 days and/or a fine of not more than $500. The penalty is thus relatively small. See *People v Adams*, 262 Mich App 89, 98-99; 683 NW2d 729 (2004) (upholding a strict liability crime of failing to pay child support despite a potential four-year jail term); *People v Motor City*

clarify proscribed conduct.[Senate Fiscal Analysis, SB 104 (as passed by the senate), August 5, 2008, available at http://www.legislature.mi.gov/documents/2007-2008/billanalysis/Senate/htm/2007-SFA-0104-B.htm (accessed March 26, 2015).]

The above analysis supports a conclusion that in enacting MCL 257.601 and repealing the Felonious Driving and Negligent Homicide statutes, the Legislature sought to erase uncertainty as to what conduct was punishable by removing any consideration of whether a motorist's conduct was careless, reckless, or negligent, and instead focusing solely on whether the motorist committed a moving violation.

*Hosp & Surgical Supply, Inc*, 227 Mich App 209, 210; 575 NW2d 95 (1997) (upholding a strict liability crime despite a potential punishment of four years' imprisonment and a $30,000 fine). Second, because the crime is a misdemeanor only, it is far less likely to "besmirch" the defendant. Cf *Wulff*, 758 F 2d at 1125 ("[A] felony conviction irreparably damages one's reputation[.]"). Thus, we conclude that it does not offend due process to hold individuals strictly liable for committing moving violations that cause serious impairment to a body function in another individual.

In sum, MCL 257.601d imposes strict liability upon a motorist who commits a moving violation causing serious impairment of a body function to another person and the statute is constitutional. The prosecution is not required to prove that defendant operated his vehicle in a negligent manner, and the trial court erred in so concluding.

Reversed and remanded for proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens