*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATRINA WHITE,

        Plaintiff-Appellant,

v

DOMENICO PACE and SUBURBAN MOBILITY
AUTHORITY FOR REGIONAL
TRANSPORTATION,

        Defendants-Appellees.

FOR PUBLICATION
November 03, 2025
12:21 PM

No. 371878
Wayne Circuit Court
LC No. 23-012947-NI

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

ACKERMAN, J.

Everyone knows it is illegal to park in a bus stop loading zone; the space is designated, after all, for the use of public transportation. Plaintiff pulled into such a zone and was struck by a bus. The trial court held that plaintiff's conduct violated the law, which in its view made her negligent as a matter of law and barred her recovery. But the trial court erred, because Michigan's near-century-old statutory definition of "parking" contains a critical exception for "loading or unloading," and plaintiff's conduct fits squarely within that exception. And even if she violated other traffic provisions, that would at most create an inference of negligence, which the factfinder must weigh against the transit authority's alleged negligence. We therefore reverse the grant of summary disposition to the transit authority and remand for further proceedings.

## I. FACTS

On May 9, 2022, plaintiff Katrina White drove her adult daughter, Delicia Johnson, to the Coleman A. Young Municipal Center in Detroit so Johnson could record a deed with the Wayne County Register of Deeds. The record does not clearly show where plaintiff went while Johnson conducted her business, but at some point Johnson called to say she was finished and ready to be picked up. Plaintiff then pulled into an opening along M-10 in front of the building, stopping in front of a fire hydrant.

Unbeknownst to plaintiff, she had pulled into a designated bus stop marked by a sign on a nearby lamppost that read "NO STANDING EXCEPT D.O.T. COACHES." According to her

-1-

testimony, Johnson was already waiting when she arrived. Plaintiff stopped the vehicle without shifting into park, and Johnson began to board.

At that moment, defendant Domenico Pace, driving a bus owned by codefendant Suburban Mobility Authority for Regional Transportation (SMART), attempted to pull into the designated bus stop to discharge and board passengers. In doing so, the rear of the bus clipped the front driver's side of plaintiff's car. Plaintiff alleges she was injured in the collision.

Plaintiff filed a one-count complaint against defendants for negligence. Defendants moved for summary disposition under MCR 2.116(C)(7) and (10), arguing that plaintiff failed to establish gross negligence against Pace and that her presence in the bus stop loading zone constituted negligence per se, making her more than 50% at fault. The trial court accepted the latter argument, reasoning that it was "plaintiff's prohibited conduct that created this hazard" and that "her own negligence precludes her recovery." The court granted summary disposition to defendants, and plaintiff now appeals.

## II. NATURE OF PLAINTIFF'S CLAIM

Before turning to the merits, we clarify the nature of plaintiff's claims in light of some confusion in the record and briefing.

Under the governmental immunity act, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function," except as otherwise provided. MCL 691.1407(1). One such exception is the motor-vehicle exception: "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405. As our Supreme Court has recognized, this provision imposes liability on governmental agencies as vehicle owners for ordinary negligence. *Alex v Wildfong*, 460 Mich 10, 22 n 21; 594 NW2d 469 (1999).

Plaintiff alleged a single count of negligence against two governmental defendants: the bus driver, Pace, and his employer, SMART. Plaintiff's complaint, motion practice, and appellate briefing make clear that she invokes the motor-vehicle exception in MCL 691.1405. Because "the restrictions set forth in the no-fault act control the broad statement of liability found in the immunity statute," *Hardy v Oakland Co*, 461 Mich 561, 565; 607 NW2d 718 (2000), plaintiff must also satisfy the requirements of the no-fault act. That act generally abolishes tort liability for auto-related accidents, but it permits recovery for "[d]amages for noneconomic loss," MCL 500.3135(3)(c), where "the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement," MCL 500.3135(1). Plaintiff's complaint does not cite that provision, but she alleges that her injuries "constitute serious impairments of body functions." It is therefore apparent that she seeks noneconomic damages under that exception.

The confusion arises with respect to plaintiff's claim against Pace. Under MCL 691.1407(2)(c), governmental employees are immune from tort liability (in relevant part) unless their conduct "amount[s] to gross negligence that is the proximate cause of the injury or damage." In other words, "while a person injured by a government employee driving a

government-owned vehicle must show gross negligence to obtain damages from the driver, the person can seek damages from the owner of the vehicle under the ordinary negligence standard." *Alex*, 460 Mich at 17 (footnotes omitted). At the hearing on defendants' motion for summary disposition, plaintiff's attorney incorrectly asserted that only ordinary negligence need be shown as to Pace. That is contrary to *Alex*.

At oral argument, plaintiff's counsel conceded that plaintiff has not alleged gross negligence against Pace. Because such an allegation is required to overcome the immunity afforded to governmental employees, and because *Alex* confirms that the motor-vehicle exception applies only to the governmental owner—not the operator—plaintiff's claim against Pace fails as a matter of law. We therefore affirm the trial court's grant of summary disposition to him.

## III. STANDARD OF REVIEW

We review questions of statutory interpretation de novo. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006). We also review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendants brought their motion under MCR 2.116(C)(7) and (10). In cases involving the motor-vehicle exception under MCL 691.1405, however, the analyses under the two rules are effectively the same, because the scope of governmental immunity mirrors that of any nongovernmental defendant contesting no-fault noneconomic damages. Under either subrule, once the defendant presents admissible evidence rebutting plaintiff's claim, the burden shifts to plaintiff to demonstrate a genuine issue of material fact for trial. See *Rowland v Detroit*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372120); slip op at 4-5.

## IV. ANALYSIS

### A. COMPARATIVE FAULT

We first consider plaintiff's contention that, even if she violated a statute, the issue is one of comparative fault for the jury to weigh against the remaining defendant's alleged negligence. We agree.

In an auto-negligence action for noneconomic damages, "[d]amages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." MCL 500.3135(4)(a). And in general, questions of comparative fault are for the jury:

> The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration. [*Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991).]

Negligence per se does not alter these principles. A violation of a statute "creates only a prima facie case from which the jury may draw an inference of negligence." *Zeni v Anderson*, 397 Mich

117, 129; 243 NW2d 270 (1976). Even then, "[i]t is . . . for the jury to determine whether violation of the statute was a proximate cause of the accident." *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 86; 393 NW2d 356 (1986). The court's role is limited: It decides only "as a matter of law that, according to the evidence presented, the jury *could* find a causal connection between the statutory violation and the accident." *Id.* at 90. It remains "the jury's duty to decide, as a matter of fact, whether the violation *was* a proximate cause of the accident." *Id.*

Here, plaintiff alleges that defendant itself acted negligently. She points to MCL 257.642(1)(a), which requires that "[a] vehicle must be driven as nearly as practicable entirely within a single lane and must not be moved from the lane until the operator has first ascertained that the movement can be safely made." She contends that Pace violated that requirement when his bus left its lane and struck her car. More broadly, "[i]t is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *People v Pace*, 311 Mich App 1, 9; 874 NW2d 164 (2015) (cleaned up).

Defendant neither argued below nor argues on appeal that plaintiff failed to state a claim upon which relief can be granted; as a result, we assume for the purpose of this appeal that she has stated a prima facie case of negligence against defendant. "[U]nless the court is of the opinion that all reasonable persons would agree," *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977), questions of negligence belong to the jury. Reasonable minds could disagree here about whether plaintiff or defendant bears greater responsibility for the accident. The allocation of fault is therefore for the jury under MCL 600.6304, and summary disposition was improper.

## B. PLAINTIFF'S NEGLIGENCE PER SE

Plaintiff also challenges the trial court's conclusion that she violated any statute to create an inference of negligence. Defendant argued in the trial court that plaintiff violated MCL 257.674(1), which provides that "[a] vehicle must not be parked" either "[w]ithin 15 feet of a fire hydrant," MCL 257.674(1)(d), or "[a]t a place where an official sign prohibits stopping or parking," MCL 257.674(1)(n). But because Johnson was boarding her vehicle, plaintiff was not "parked" within the meaning of the statute and therefore did not violate it.

The Michigan Vehicle Code, MCL 257.1 *et seq.*, defines "parking" as "standing[1] a vehicle, whether occupied or not, upon a highway, when not loading or unloading except when making necessary repairs." MCL 257.38. By that definition, a vehicle engaged in loading or unloading is not "parked," even if it is otherwise motionless. Because defendant concedes that plaintiff had her foot on the brake and was assisting her passenger, she was by definition not parked.

This Court applied the same logic in *Bensinger v Happyland Shows, Inc*, 44 Mich App 696; 205 NW2d 919 (1973). There, the defendant was driving through Traverse City when, at

---

[1] The statute does not define "stand," but the apparent intended definition is "[t]o come to a stop; remain motionless." *The American Heritage Dictionary of the English Language* (5th ed).

2:30 a.m., he became concerned that one of his rear lights was out. He stopped his car in the right-hand lane of US-31/M-72 in a zone marked "No parking at any time." A motorcyclist then rear-ended his truck, killing the sidecar passenger. The decedent's estate requested a jury instruction that stopping in violation of the statute created an inference of negligence.

In addressing whether the defendant was "parked," this Court tracked the statutory definition in MCL 257.38:

> There can be no question that the undisputed facts establish that defendant violated MCLA 257.674. Defendant Hone stopped the vehicle upon the highway and permitted it to stand there *and was not loading or unloading it*. There is no evidence that he stopped the vehicle to make any necessary repairs as the vehicle did not break down on the highway. Rather, the evidence clearly shows that he stopped the vehicle to ascertain whether the lights on the rear of the vehicle were functioning properly and not to make any necessary repairs. [*Bensinger*, 44 Mich App at 702 (emphasis added).]

The analysis was straightforward. Had the defendant been loading or unloading his truck (or performing necessary repairs), he would not have been "parked" within the statutory meaning. But because he was not engaged in either of those activities, he *was* illegally parked.

To be sure, the statutory definition produces counterintuitive results. If a car is not "parked" while unloading, even directly in front of a fire hydrant, then the prohibition in MCL 257.674(1)(d) is weakened. Why the statute adopted this definition is difficult to pinpoint, but it almost certainly reflects the fact that the language has remained untouched since Michigan's enactment of the Uniform Motor Vehicle Act Regulating the Operation of Vehicles on Highways. See 1927 PA 318, § 1(s). That statute was signed into law less than a week after the last Ford Model T rolled off the Highland Park assembly line.[2] At that time, automobiles were as often tractors as transports, and the pace of traffic bore little resemblance to modern highways.

This Court has previously recognized challenges posed by MCL 257.38's definition of "parked" and has limited its use where possible. The definition takes on particular importance in the no-fault context, where benefits often hinge on whether a vehicle is "parked," see MCL 500.3106 and MCL 500.3123, yet "the word 'parked' is not defined in the no-fault act," *Woodring v Phoenix Ins Co*, 325 Mich App 108, 120; 923 NW2d 607 (2018). In *Woodring*, we declined to import the Vehicle Code's definition into the no-fault act, even though the subject matter overlaps. We described it as "extremely troublesome" in that it would "seem to hold that a vehicle is by definition not parked 'when making necessary repairs' even if it is not moving" and "would also seem to indicate that a vehicle *is* parked while motionless at a traffic light." *Id*. at 121-122. It would be "completely unreasonable," we explained, to treat "a vehicle that is

---

[2] *Flapper Flivver Meets Her Sister of the Gay 90's*, Detroit News (May 27, 1927), p 1 (reporting the 15,000,000th Model T and quoting a company official as saying, "[w]ith the completion of this car we have stopped production of the Model T for the time being"). The statute was signed into law June 1, 1927.

unambiguously still within the flow of traffic but temporarily motionless" as "a parked vehicle under the no-fault act." *Id*. at 121.

Unlike in *Woodring*, however, we do not have the discretion to restrict the definition here. In MCL 257.1, the Legislature has expressly directed that the definition of "parked" in MCL 257.38 applies to MCL 257.674(1). And defendant concedes that plaintiff "had her foot on the brake and was helping to load her passenger." Because plaintiff was undisputedly engaged in loading, she was by definition not "parked" under MCL 257.38 and therefore could not have been *illegally* parked under MCL 257.674(1).

In this Court, defendant raises additional authority that it claims plaintiff violated. The trial court did not have the benefit of these arguments, but they do not alter our conclusion that plaintiff cannot be held negligent as a matter of law. Under MCL 257.951(1), municipalities "may adopt by reference a code or ordinance for the regulation of traffic . . . that has been promulgated by the director of the department of state police." Detroit has done just that. Detroit Ordinances, § 46-3-1(a). That code—known as the Uniform Traffic Code, Mich Admin Code, R 28.1901— provides:

> A person shall not stop, stand, or park a vehicle other than a bus in a bus stop or other than a taxicab in a taxicab stand when the stop or stand has been officially designated and appropriately signed, except that the driver of a passenger vehicle may temporarily stop therein for the purpose of, and while actually engaged in, the expeditious loading or unloading of passengers, if the stopping does not interfere with any bus or taxicab waiting to enter or about to enter the zone. [Rule 28.1820(1).]

Plaintiff may have violated this provision. The Uniform Traffic Code does not define "park," instead incorporating the Michigan Vehicle Code's definition by reference. Rule 28.1001(2). As discussed, plaintiff was not "parked" because she was loading. The Uniform Traffic Code *does* define "stand" and "stop." "Stand" means "the halting of a vehicle, other than for the purpose of, and while actually engaged in, receiving or discharging passengers." Rule 28.1001(1)(m). By that definition, plaintiff was not standing.[3] "Stop," however, is defined as "the halting, even momentarily, of a vehicle, whether occupied or not." Rule 28.1001(1)(o). Plaintiff concedes that she halted, at least momentarily, in the bus loading zone.

Even so, whether plaintiff "interfere[d] with any bus . . . about to enter the zone" is a question of fact. "Interfere" is defined as "[t]o be or create a hindrance or obstacle: *The rain interfered with our plans to go on a picnic.*" *American Heritage Dictionary*. The mere fact that

---

[3] Defendant also points to a local ordinance that provides: "Where signs prohibiting standing are installed, no operators shall stand or park a vehicle in any such designated place." Detroit Ordinances, § 46-4-11(b). This does not support defendant because Detroit's traffic laws expressly incorporate the Michigan Vehicle Code's definitions, *id*. § 46-3-1(a), as well as the Uniform Traffic Code, *id*. § 46-3-1(a), and as we have established, plaintiff was neither "parked" nor "standing" under those laws.

the bus scraped plaintiff's car is not, by itself, proof of interference. The bus must take reasonable care to avoid obstacles—but no more than reasonable care. A jury could conclude that plaintiff's encroachment on the bus zone was *de minimis*, or that Pace failed to maneuver carefully enough. Ultimately, the question remains one of comparative fault for the jury.

## V. CONCLUSION

We presume for the sake of this appeal that plaintiff has stated a prima facie case of negligence on defendant SMART's part. Given that presumption, any statutory violation by plaintiff may create an inference of negligence on her part, but it is for the factfinder to weigh her fault against defendant's alleged negligence. On this record, reasonable minds could differ about who was more to blame.

We also hold that plaintiff did not violate MCL 257.674(1), because under MCL 257.38's definition of "parked," a vehicle engaged in loading is not "parked." Even if defendant can prove that plaintiff violated another provision, such as Rule 28.1820(1) of the Uniform Traffic Code, that would not entitle it to summary disposition. At most, it would allow the factfinder to infer negligence on plaintiff's part that it could weigh against defendant's alleged negligence.

The trial court's order granting summary disposition to defendant SMART is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.[4]

/s/ Matthew S. Ackerman
/s/ Brock A. Swartzle
/s/ Christopher M. Trebilcock

---

[4] As explained in Part II, plaintiff's counsel conceded at oral argument that plaintiff did not plead gross negligence against Pace. Because such an allegation is required to overcome the immunity afforded to governmental employees under MCL 691.1407(2)(c), we affirm the trial court's dismissal of the claim against him.