*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LANDON JAMES EDWARDS,

        Defendant-Appellant.

UNPUBLISHED
December 18, 2025
2:25 PM

No. 371246
Otsego Circuit Court
LC No. 2022-006434-FH

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Defendant, Landon James Edwards, appeals as of right his jury trial convictions of possession with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401(2)(d)(*iii*), second or subsequent offense, MCL 333.7413, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and carrying a concealed weapon (CCW), MCL 750.227. Edwards was sentenced as a second-offense habitual offender, MCL 769.10, to serve concurrent terms of 12 months' incarceration for the intent-to-deliver conviction and 28 to 90 months' incarceration for the CCW conviction, in addition to a consecutive term of 24 months' incarceration for his felony-firearm conviction. We conclude that this Court's decision in *People v Soto*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 370138), applies here, and, under that decision, the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 777.29851 *et seq*., does not bar Edwards's felony marijuana conviction under MCL 333.7401(2)(d)(*iii*).

-1-

# I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a traffic stop involving Edwards and his girlfriend, which resulted in the police discovering approximately 2.8 pounds of marijuana[1] inside the trunk of his girlfriend's vehicle, in addition to a loaded revolver under the front passenger seat where Edwards was seated. On May 19, 2022, Edwards and his girlfriend were pulled over by Michigan State Police Trooper Jacob Hubbard on I-75, after Hubbard conducted a law enforcement information network search of his girlfriend's vehicle, indicating that the license plate was expired as of April 2022. Trooper Hubbard approached Edwards's girlfriend, the owner and driver of the vehicle, who acknowledged the expiration of her license plate and further disclosed that there was marijuana in the car, but no weapons. Edwards's girlfriend provided Trooper Hubbard with consent to search her vehicle. During the subsequent search conducted by Trooper Hubbard and Michigan State Police Sergeant Ronald Nadeau, the officers recovered a ".22 caliber six-shot Ruger revolver" under the front passenger seat Edwards previously occupied, as well as a black duffel bag filled with jars and Ziploc bags containing marijuana amounting to about 2.8 pounds in the trunk of the vehicle. Edwards conceded that he was the owner of the firearm and the discovered marijuana, and he was charged accordingly. Following a one-day jury trial, Edwards was convicted as provided earlier.

Before sentencing, Edwards moved for a directed verdict or new trial. Edwards, citing *People v Kejbou*, 348 Mich App 467, 482; 19 NW3d 393 (2023), argued that he was entitled to a misdemeanor trial for the possession-with-intent-to-deliver-marijuana offense because *Kejbou* indicated that the MRTMA governed prosecutions for marijuana offenses, the MRTMA barred any form of punishment inconsistent with the act, and the MRTMA prohibited the use of MCL 333.7401 as the basis for a felony charge. Thus, Edwards contended, he was improperly charged with a felony under MCL 333.7401(2)(d)(*iii*), and the statute could not be used as the predicate for the felony-firearm offense. The prosecution responded that the *Kejbou* Court limited its holding to the facts of that case—namely, felony prosecutions for unlawful marijuana grow operations, and that this Court did not address whether the MRTMA controlled felony prosecutions for possession or delivery marijuana offenses.

Following a motion hearing, the trial court denied Edwards's motion for a directed verdict or new trial, agreeing with the prosecution that *Kejbou* solely pertained to the factual circumstances presented in that case, which concerned whether the MRTMA barred felony prosecutions for persons accused of operating unlicensed marijuana grow operations under MCL 333.7401(2)(d)(*i*). The court further reasoned that because Edwards was neither charged with operating an unlawful marijuana grow operation nor did the matter involve the sale of marijuana without a license at a retail establishment, the present case presented a "black market situation." The trial court concluded that *Kejbou* was inapplicable, and it issued a written order denying Edwards's motion. Edwards was then sentenced as previously detailed. This appeal ensued.

---

[1] "Although the statutory provisions at issue refer to 'marihuana' . . . , by convention this Court uses the more common spelling 'marijuana' in its opinions." *People v Carruthers*, 301 Mich App 590, 593 n 1; 837 NW2d 16 (2013) (quotation marks and citation omitted).

## II. LEGAL BACKGROUND

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime were charged beyond a reasonable doubt." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014). This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable outcomes." *Id.*

Statutory interpretation also presents a question of law reviewed de novo. *People v Pace*, 311 Mich App 1, 4; 874 NW2d 164 (2015). De novo review means "we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019).

The present case involves the interplay of Article 7 of the Public Health Code, MCL 333.1101 *et seq.*, and the MRTMA. "A fundamental rule of statutory interpretation is to determine the purpose and intent of the Legislature in enacting a provision." *People v Cannon*, 206 Mich App 653, 655; 522 NW2d 716 (1994). "Generally, we presume that the Legislature intended the meaning it plainly expressed." *Kejbou*, 348 Mich App at 472 (quotation marks and citation omitted). "If no ambiguities are present in the statute's language, there is no need for interpretation and the statute must be applied as written." *Id.* (quotation marks and citation omitted).

The MRTMA, however, was enacted as a result of a ballot initiative, 2018 PA IL, through which the people of Michigan voted to decriminalize recreational marijuana use statewide. *Kejbou*, 348 Mich App at 474-475. As explained by the Michigan Supreme Court:

> Our Constitution provides that "[a]ll political power is inherent in the people." Const 1963, art 1, § 1. In other words, the people bestow power unto the branches of government, not the other way around. *Id.* It is in that context that "[t]he people reserve to themselves," rather than to the Legislature, "the power to propose laws and to enact and reject laws" through the initiative process. Const 1963, art 2, § 9 (emphasis added). Thus, "[a]rt 2, § 9, is a reservation of legislative authority which serves as a limitation on the powers of the Legislature. This reservation of power is constitutionally protected from government infringement once invoked[.]" *Woodland v Mich Citizens Lobby*, 423 Mich. 188, 215, 378 N.W.2d 337 (1985). [*Mothering Justice v Attorney Gen*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165325); slip op at 12 (alterations in original), amended 10 NW3d 845 (2024).]

"This Court interprets laws passed by initiative by determining the intent of the electorate, rather than the intent of the Legislature." *Soto*, ___ Mich App at ___; slip op at 2, citing *People v Hartwick*, 498 Mich 192, 210; 870 NW2d 37 (2015). But like legislatively-enacted statutes, the "interpretation is ultimately drawn from the plain language of the statute, which provides the most reliable evidence of the electors' intent." *Hartwick*, 498 Mich at 210-211 (quotation marks and citation omitted).

When the MRTMA was enacted, the act included a broad statement of purpose:

> The purpose of this act is to make marihuana legal under state and local law for adults 21 years of age or older, to make industrial hemp legal under state and local law, and to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved. The intent is to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older; remove the commercial production and distribution of marihuana from the illicit market; prevent revenue generated from commerce in marihuana from going to criminal enterprises or gangs; prevent the distribution of marihuana to persons under 21 years of age; prevent the diversion of marihuana to illicit markets; ensure the safety of marihuana and marihuana-infused products; and ensure security of marihuana establishments. To the fullest extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section. [MCL 333.27952.]

"The MRTMA significantly curtailed criminal penalties for marijuana-related conduct. It decriminalized the use and possession of marijuana within specified limits, rendered certain conduct civil infractions, and limited law enforcement authority to arrest or prosecute based solely on marijuana activity compliant with the Act." *People v Soto*, 22 NW3d 554, 556 (2025) (BOLDEN, J., dissenting), citing MCL 333.27952; MCL 333.27955; MCL 333.27965. However, the MRTMA did not explicitly repeal or amend the Public Health Code's felony provisions for intent-to-deliver offenses. Rather, the MRTMA provides, "All other laws inconsistent with this act do not apply to conduct that is permitted by this act." MCL 333.27954(5). While such language was constructive in prohibiting felony prosecutions for MRTMA-compliant conduct, the MRTMA "left a critical question unanswered: how should the state treat nonviolent marijuana conduct not expressly authorized by the Act?" *Soto*, 22 NW3d at 556. This question has been addressed by this Court in two published decisions.

In *Kejbou*, the defendant was bound over for trial, in part, on the felony charge of manufacturing 200 or more marijuana plants, MCL 333.7401(2), after the police discovered an "extensive, unlicensed marijuana grow operation" on the defendant's property. *Kejbou*, 348 Mich App at 469-470. The defendant moved to quash the manufacturing-marijuana charge, in addition to the felony-firearm charge that was predicated on it, contending the MRTMA "limited the prosecution of his manufacturing-marijuana charge to misdemeanor status." *Id*. at 470-471. The trial court agreed, resulting in the prosecution appealing in this Court. *Id*. at 471. In examining whether "the MRTMA or Article 7 of the Public Health Code should provide the framework for prosecuting a manufacturing-marijuana charge in cases involving unlicensed commercial grow operations," this Court determined that the MRTMA governed such matters because the act "was enacted to prevent situations like that which we are presented with here, in which the prosecution seeks a felony conviction for an unlicensed marijuana grow operation." *Id*. at 471, 476.

The *Kejbou* Court, recognizing that it could not harmonize the MRTMA with Article 7 of the Public Health Code as the latter criminalizes the conduct permitted by the former, reasoned:

> On top of including a statement of purpose that expressly indicates that the MRTMA was designed to govern and regulate commercial marijuana production,

the statute does not state that persons whose activities exceed the scope of protected conduct are left at the mercy of the Public Health Code or other criminal statutes. If anything, the statute states the opposite as regards the instant situation, providing that a person possessing or cultivating marijuana in quantities exceeding those specified, who "is not otherwise authorized by this act to conduct such activities, may be punished only as provided in this section and is not subject to any other form of punishment . . . . " MCL 333.27965 (emphasis added). The MRTMA thus acknowledges that its provisions do create conflicts with other criminal statutes, and it emphatically decrees that, when they do, the MRTMA prevails. [*Id*. at 480-481.]

The *Kejbou* panel additionally stated, "We take no position on whether the MRTMA controls when a defendant is charged for possessing an amount of marijuana or marijuana plants in excess of the amounts considered legal for personal, recreational use under the MRTMA." *Id*. at 471 n 3. This Court, in *Soto*, however, did.

In *Soto*, the defendant was charged with possession with intent to deliver between 5 and 45 kilograms of marijuana, MCL 333.7401(2)(d)(*ii*), after 20 pounds of marijuana was seized from her residence. *Soto*, ___ Mich App at ___; slip op at 1-2. The defendant moved to dismiss the charges, claiming that "the MRTMA prohibited the prosecution of her possession-with-intent-to-deliver-marijuana charge as a felony." *Id*. at ___; slip op at 2. The trial court denied the defendant's motion, ruling that the matter fell under Article 7 of the Public Health Code as opposed to the MRTMA. *Id*. This Court affirmed, concluding that "the MRTMA does not prevent a person accused of possession with intent to deliver between 5 and 45 kilograms of marijuana from being prosecuted under MCL 333.7401(2)(d)(*ii*)." *Id*. at ___; slip op at 3. The *Soto* Court reasoned that while the Public Health Code expressly penalized the defendant's act as a felony, there was "no counterpart for defendant's alleged conduct in the MRTMA" under the list of conduct subject to misdemeanor penalties pursuant to MCL 333.27965(4), demonstrating "the electorate's deliberate exclusion of possession with intent to deliver larger quantities of marijuana from the scope of the MRTMA." *Id*. at ___; slip op at 3-5. The Court further attempted to distinguish between the present circumstances and *Kejbou* stating, "We are not limited by the decision in *Kejbou*, however, because the relevant statutory provisions are not in conflict in this case." *Id*. at ___; slip op at 6. The *Soto* Court additionally noted that the "exclusion of possession with the intent to deliver larger quantities of marijuana from the scope of the MRTMA is consistent with one of the specified purposes of the Act, that is to '*prevent the diversion of marihuana to illicit markets*.' " *Id*., quoting MCL 333.27952.

## III. ANALYSIS

The statute under which Edwards was charged and convicted of unlawfully possessing with intent to deliver less than 5 kilograms of marijuana, MCL 333.7401, §§ 1 and 2 of Article 7 of the Public Health Code, states in pertinent part:

> (1) Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form . . . .

(2) A person who violates this section as to:

\* \* \*

(d) Marihuana, a mixture containing marihuana, or a substance listed in section 7212(1)(d) is guilty of a felony punishable as follows:

(*i*) If the amount is 45 kilograms or more, or 200 plants or more, by imprisonment for not more than 15 years or a fine of not more than $10,000,000.00, or both.

(*ii*) If the amount is 5 kilograms or more but less than 45 kilograms, or 20 plants or more but fewer than 200 plants, by imprisonment for not more than 7 years or a fine of not more than $500,000.00, or both.

(*iii*) If the amount is less than 5 kilograms or fewer than 20 plants, by imprisonment for not more than 4 years or a fine of not more than $20,000.00, or both.

Comparatively, Section 5 of the MRTMA legalizes the possession, use or consumption, internal possession, purchase, transport, or processing of up to 2½ ounces of marijuana. Specifically, MCL 333.27955 provides, in relevant part:

1. Notwithstanding any other law or provision of this act, and except as otherwise provided in section 4 of this act, the following acts by a person 21 years of age or older are not unlawful, are not an offense, are not grounds for seizing or forfeiting property, are not grounds for arrest, prosecution, or penalty in any manner, are not grounds for search or inspection, and are not grounds to deny any other right or privilege:

(a) except as permitted by subdivision (b), possessing, using or consuming, internally possessing, purchasing, transporting, or processing 2.5 ounces or less of marihuana, except that not more than 15 grams of marihuana may be in the form of marihuana concentrate;

(b) within the person's residence, possessing, storing, and processing not more than 10 ounces of marihuana and any marihuana produced by marihuana plants cultivated on the premises and cultivating not more than 12 marihuana plants for personal use, provided that no more than 12 marihuana plants are possessed, cultivated, or processed on the premises at once;

\* \* \*

2. Notwithstanding any other law or provision of this act, except as otherwise provided in section 4 of this act, the use, manufacture, possession, and purchase of marihuana accessories by a person 21 years of age or older and the distribution or sale of marihuana accessories to a person 21 years of age or older is authorized, is not unlawful, is not an offense, is not grounds for seizing or forfeiting

property, is not grounds for arrest, prosecution, or penalty in any manner, and is not grounds to deny any other right or privilege.

Section 15 of the MRTMA delineates exclusive penalties for "[a] person who commits any of the following acts, and is not otherwise authorized by this act to conduct such activities," noting such persons "may be punished only as provided in this section and is not subject to any other form of punishment or disqualification . . . ." MCL 333.27965. Those acts include:

> 1. . . . a person who possesses not more than the amount of marihuana allowed by section 5, cultivates not more than the amount of marihuana allowed by section 5, delivers without receiving any remuneration to a person who is at least 21 years of age not more than the amount of marihuana allowed by section 5, or possesses with intent to deliver not more than the amount of marihuana allowed by section 5, is responsible for a civil infraction and may be punished by a fine of not more than $100 and forfeiture of the marihuana.

> 2. . . . Except for a person who engaged in conduct described in section 4, a person who possesses not more than twice the amount of marihuana allowed by section 5, cultivates not more than twice the amount of marihuana allowed by section 5, delivers without receiving any remuneration to a person who is at least 21 years of age not more than twice the amount of marihuana allowed by section 5, or possesses with intent to deliver not more than twice the amount of marihuana allowed by section 5[.]

> \* \* \*

> 4. Except for a person who engaged in conduct described in section 4, a person who possesses more than twice the amount of marihuana allowed by section 5, cultivates more than twice the amount of marihuana allowed by section 5, or delivers without receiving any remuneration to a person who is at least 21 years of age more than twice the amount of marihuana allowed by section 5, shall be responsible for a misdemeanor, but shall not be subject to imprisonment unless the violation was habitual, willful, and for a commercial purpose or the violation involved violence.

Here, Edwards was caught with 2.8 pounds (approximately 45 ounces) of marijuana, which far exceeded both "the amount of marihuana allowed by section 5," i.e., 2.5 ounces, as well as double that amount, i.e., 5 ounces. Thus, the amount Edwards possessed with the intent to distribute was not eligible for the punishments of either MCL 333.27965(1) or (2). As for subsection (4), Edwards did not just "possess" the marijuana, but "possesse[d] it with intent to deliver," which is conspicuously missing from that subsection. See MCL 333.27965(4). Thus, Edwards's criminal act fell outside the four corners of MCL 333.27965.

Like the defendant in *Soto*, Edwards was accused of possessing with intent to deliver an unlawful amount of marijuana; conduct for which the MRTMA does not expressly contain a counterpart provision concerning misdemeanor penalties, notwithstanding the fact the *Soto* defendant was charged with the higher offense of possessing with intent to deliver 5 to 45

kilograms of marijuana. *Soto*, ___ Mich App at ___; slip op at 3-5. Thus, pursuant to *Soto*, because there are no statutes in conflict, the Public Health Code governs, rendering the contested felony prosecution and subsequent conviction under MCL 333.7401(2)(d)(*iii*) permissible. The trial court did not err by denying Edwards's motion for a directed verdict or new trial. *Soto*, ___ Mich App at ___; slip op at 6.

Edwards is not entitled to relief regarding his intent-to-deliver conviction or his felony-firearm conviction, as the marijuana offense properly serves as the predicate felony for the latter under the Public Health Code.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien